**TEXAS ANIMAL HEALTH COMMISSION and John Holcombe, in his Official Capacity, Appellants,**

v.

**Julio Alfonso GARZA, Appellee.**

No. 04–97–00793–CV.

Court of Appeals of Texas, San Antonio.

June 7, 2000.

Rehearing Overruled July 6, 2000.

Rehearing En Banc Overruled Aug. 14, 2000.

Steve Snelson, Janine "Red" Balacki, Asst. Atty. Gen., Austin, for appellants.

Larry R. Daves, Larry R. Daves & Associates, San Antonio, Ana Lisa G. Alvarez, Law Office of Ana Lisa G. Alvarez, Rio Grande, for appellee.

Sitting: PHIL HARDBERGER, Chief Justice, TOM RICKHOFF, Justice, ALMA L. LÓPEZ, Justice.

## OPINION

Opinion by: ALMA L. LÓPEZ, Justice.

This is an appeal from a jury verdict in favor of Julio Alfonso Garza's claim of wrongful termination in violation of the Texas Anti–Retaliation Law.[1] The trial court ordered the reinstatement of Garza with the Texas Animal Health Commission ("TAHC")[2] and ordered TAHC to pay Garza the total sum of $310,643.33 for past lost wages, mental anguish damages, and interest. Finding merit with four of appellant's issues, we affirm the judgment of the trial court in part and reverse the judgment of the trial court in part.

### FACTUAL AND PROCEDURAL BACKGROUND

Julio Garza began his employment with the TAHC on September 1, 1981, as a brucellosis inspector. His work area encompassed Starr County and other counties included in TAHC's Area 12. His responsibilities as a brucellosis inspector included bleeding and tagging cattle, vaccinating and tattooing calves, and working livestock markets. In May of 1988, Garza was injured as he attempted to bleed a cow. Garza notified his immediate supervisor, Lynn Hermes, of his injury. Hermes never mentioned to Garza the possibility of filing a worker's compensation claim. Garza also informed Area 12 director, Dr. Bill Brown, who failed to mention to Garza the possibility of filing a claim. During this time, Garza saw two doctors, a chiropractor and an orthopedic surgeon, Dr. Kenneth Reidland. Garza underwent surgery in January 1989 for this injury. Until his surgery in 1989, Garza continued working with the injured shoulder. After surgery, Garza filed a claim for worker's compensation.

Garza spoke to TAHC Personnel Director Sharman Eskew regarding the filing of a claim. Eskew sent in the necessary paperwork. While Garza was recuperating at home, Hermes visited to obtain an accident report as part of the worker's compensation claim process. At that time, Hermes recounted his own experience concerning a claim which he had filed with the Worker's Compensation Board. Hermes stated that his claim had been denied and, that more than likely, so would Garza's claim. Garza described Hermes's demeanor as angry. At trial, Garza testified that Hermes had asked humiliating questions regarding his injury. In particular, Hermes asked "Which hand do you use to wipe you're [sic] awhen you take a s—?" He also inquired about Garza's physical relationship with his wife.

Garza used his annual leave and sick leave for surgery and recuperation. Once his paid leave was exhausted, Garza remained on leave without pay from work.

---

1. *See* Act of April 22, 1971, 62 nd Leg., R.S., ch. 115, 971 Tex. Gen. Laws 884, *repealed by* Act of May 12, 1993 73 rd R.S., ch. 269, § 5, 1993 Tex. Gen. Laws 987, 1273 (current version at TEX. LAB.CODE ANN. § 451.001 (Vernon 1996)). ·

2. For the sake of simplicity and clarity, TAHC and Holcombe will be addressed as TAHC collectively unless otherwise indicated.

Garza testified that Dr. Brown informed him that he qualified for up to 90 days of paid extended sick leave. Garza made a formal written request to Dr. John Holcombe, Director of TAHC in Austin. Holcombe communicated to Garza, via a letter sent to Garza's attorney, that he maintained sole discretion in dispensing of special leave requests. He then informed Garza that he qualified for only 80 hours of paid extended sick leave.

Garza was later informed that TAHC would need an updated medical evaluation report from an approved doctor. Garza obtained and delivered this medical evaluation to Dr. Brown. Pursuant to the medical evaluation, Garza requested light duty work, specifically the job of tick inspector. Dr. Brown responded that it could be done, but that he would have to check with Hermes. Hermes stated that it "wasn't o.k. with him." Garza's subsequent attempts to contact Dr. Brown were discouraged by Hermes. Garza continued to remain out of work.

In September of 1989, Garza contacted Eskew who informed him that he had been fired. He received a letter from Dr. Holcombe on September 22, 1989, stating that his termination was effective as of August 31, 1989. Garza complained to Dr. Holcombe that his termination did not follow personnel policy guidelines. A second letter was sent by Holcombe acknowledging that Garza could appeal to TAHC appeals board in Austin. Garza was given the mandatory two weeks notice to file his appeal. A hearing was held in Austin in January 1990. After the hearing, Holcombe sent Garza a third letter informing him that he was terminated and that his termination would be effective February 8, 1990.

Garza sued TAHC asserting violations of the Anti–Retaliation Law and that his rights to due process had been violated under the Texas Constitution. A jury found in favor of Garza on all his claims. We previously issued an opinion in this case regarding whether the trial court maintained subject matter jurisdiction. *See Texas Animal Health Comm'n v. Garza*, 980 S.W.2d 776 (Tex.App.–San Antonio 1998, no writ). We held that it did. *Id.* at 777. We now address TAHC's substantive issues on appeal.

## CLAIM BARRED BY SOVEREIGN IMMUNITY

 In its first issue, TAHC contends that the trial court erred in granting judgment for Garza on his claim pursuant to the Anti–Retaliation Law because such a claim is barred by sovereign immunity. Currently, the Anti–Retaliation Law in Texas provides the following:

> A person may not discharge or in any manner discriminate against an employee because the employee has:
>
> (1) filed a worker's compensation claim in good faith;
>
> (2) hired a lawyer to represent the employee in a claim;
>
> (3) instituted or cause to be instituted in good faith a proceeding under Subtitle A; or
>
> (4) testified or is about to testify in a proceeding under Subtitle A.

TEX. LAB.CODE ANN. § 451.001 (Vernon 1996).[3] Absent consent to sue, a state agency is immune from suit and liability. *Duhart v. State*, 610 S.W.2d 740, 741 (Tex. 1980). With respect to the waiver of governmental immunity, waiver or the consent to sue must be given clearly and unambiguously. *Id.* at 742; *City of LaPorte v. Barfield*, 898 S.W.2d 288, 291 (Tex.1995). In *Fernandez v. Kerrville State Hosp.*, 985 S.W.2d 121 (Tex.App.-San Antonio 1998, pet. granted), we faced the same issue which appellant now raises in its first issue: whether the Legislature clearly and

---

3. This section is a re-codification of the prior law codified at article 8307c of the Texas Revised Civil Statutes Annotated which existed at the time of Garza's termination. No substantive changes were made from the old codification to the new codification. Therefore, we apply the current law.

unambiguously waived sovereign immunity of a state agency for the purpose of claims under the Anti–Retaliation Law. In *Fernandez*, we tracked the legislative history of the State Applications Act. Codified in 1993, amended in 1995 and 1997, the State Application Act provides, in pertinent part, the following:

> (a) The following provisions ... apply to and are included in this chapter except to the extent that they are inconsistent with this chapter:
>
> (10) Chapter 451 [Anti–Retaliation Law].
>
> (b) For the purposes of this chapter, and Chapter 451, the individual state agency shall be considered the employer.
>
> (c) For the purpose of applying the provisions listed by Subsection (a) to this chapter "insurer" or "employer" means "state," "office," "director," or "state agency" as applicable.
>
> (d) Neither this chapter or Subtitle A authorizes a cause of action or damages against the state, a state agency, or an employee of the state beyond the actions and damages authorized by Chapter 101, Civil Practice and Remedies Code.

TEX. LAB CODE ANN. § 501.002 (Vernon Supp.2000).

In our opinion, we followed the analysis utilized by the Texas Supreme Court in *Barfield*. *See Fernandez*, 985 S.W.2d at 122 (stating that analysis examining the issue of whether Political Subdivisions Law waived immunity was analogous to waiver of immunity of state agency under State Applications Act). With the adoption of Section 15 in the 1981 version of the Act,[4] and subsequent additions and amendments in the 1989 version,[5] we concluded that the Legislature intended to waive state agencies' immunity to suits under the Anti–Retaliation Law. *Id.* at 127–28. In addi-

tion, we specifically disagreed with our sister courts' opinions in *Southwest Texas State Univ. v. Enriquez*, 971 S.W.2d 684, 686–87 (Tex.App.-Austin 1998, pet. denied), and *Texas Dep't of Health v. Ruiz*, 960 S.W.2d 714, 717 (Tex.App.-El Paso 1997, pet. denied), on the basis that these courts misread the holding of *Barfield*. *See Fernandez*, 985 S.W.2d at 122.

TAHC is a state agency of the State of Texas. TEX. AGRIC. CODE ANN. § 161.021 *et. seq.* (Vernon 1982). Given our holding in Fernandez, we find that sovereign immunity was waived by TAHC. Accordingly, we overrule TAHC's first issue.

### NO EVIDENCE

In its second issue, TAHC argues that there was no evidence establishing a causal connection between Garza's claim for worker's compensation and his termination by TAHC. This assertion amounts to a no-evidence claim. *See* TEX. R.APP. P. 38.1. We review a claim of no evidence considering all the evidence in the record in the light most favorable to the party in whose favor the verdict was rendered, and indulge every reasonable inference in that party's favor. *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285–86 (Tex.1998); *Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex.1998). Our scope of review includes all the evidence.

Under the Anti–Retaliation Law, a prima facie case of retaliation is established where the plaintiff has met the burden of establishing a causal link between the termination and the filing of a claim for workers' compensation benefits. *Texas Dep't of Human Services v. Hinds*, 904 S.W.2d 629, 636 (Tex.1995) (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–805, 93 S.Ct. 1817, 36 L.Ed.2d 668

---

4. *See* Act of May 19, 1973, 63 Leg., R.S., ch. 88 § 16, sec. 15, 1973 Tex. Gen. Laws 187, 197–98 amended by Act of May 31, 1981, 67th Leg., R.S., ch. 352, § 1, § 2, sec. 15, 1981 Tex. Gen. Laws 937, 937.

5. *See* Act of Dec. 12, 1989, 71st Leg., 2d C.S., ch. 1, § 15.44, 1989 Tex. Gen. Laws 1, 111–112.

(1973)); *Hughes Tool Co. v. Richards*, 624 S.W.2d 598, 599 (Tex.Civ.App.-Houston [14th Dist.] 1981, writ ref'd n.r.e.) *cert. denied*, 456 U.S. 991, 102 S.Ct. 2272, 73 L.Ed.2d 1286 (1982). Once this burden had been met, the burden shifts to the employer to rebut the alleged discrimination by showing there was a legitimate reason for the employee's termination. Id. Although a former employee need not prove that the filing of a worker's compensation claim was the sole cause of termination, we must determine that were it not for the filing of a claim, the employer's decision to terminate would not have occurred. *See Continental Coffee Products Co. v. Cazarez*, 937 S.W.2d 444, 450–51 (Tex.1996); *Urquidi v. Phelps Dodge Refining Corp.*, 973 S.W.2d 400, 403 (Tex. App.-El Paso 1998, no pet.).

�the parties in the present case concede that no direct evidence established the causal link between Garza's discharge and his filing of a worker's compensation claim. However, circumstantial evidence and the reasonable inferences which can be drawn from that evidence can provide affirmative support for the jury's finding. *Investment Properties Management, Inc. v. Montes*, 821 S.W.2d 691, 694 (Tex.App.-El Paso 1991, no writ); *Paragon Hotel Corp. v. Ramirez*, 783 S.W.2d 654, 658 (Tex.App.-El Paso 1989, writ denied). The following circumstantial evidence can be considered: (1) knowledge of a compensation claim by those making the decision to terminate; (2) expression of a negative attitude toward the employee's injury; (3) failure to adhere to established company policies with regard to progressive disciplinary action, and (4) discriminatory treatment of an employee in comparison to other employees. *Ramirez*, 783 S.W.2d at 658.

It is uncontested that Dr. Brown and Lynn Hermes, Garza's direct superiors, knew that Garza had filed a worker's compensation claim. Eskew ordered Hermes to complete an accident report pursuant to this claim. This required Hermes to meet with Garza where Hermes did more than question Garza as to the specifics of the on-the-job-injury. The uncontroverted testimony of Garza established Herme's animosity to the claim process which he directed towards Garza. The negative attitude continued after Garza's claim was denied. TAHC, Hermes specifically, would not agree to Garza's transfer to the position of tick inspector, despite evidence that other workers had been permitted to transfer to the position of tick inspector from brucellosis inspector.

The jury also heard evidence addressing TAHC's failure to follow outlined disciplinary procedures. Pursuant to the terms of the policy manual, as a non-probationary employee, Garza was entitled to two-weeks notice of termination for the purpose of instituting an appeal. However, TAHC initially fired Garza without providing for notice and hearing. TAHC testified that Garza's termination was treated as an administrative termination. However, the policy manual did not distinguish between normal and administrative terminations. In an attempt to correct its mistake, TAHC later granted Garza two weeks notice and the right to appeal pursuant to agency policy.[6]

As noted above, the evidence suggested discriminatory treatment of Garza in comparison to other employees in similar situations. There was some evidence that TAHC permitted the transfer of employees who could not maintain their present position for one reason or another. Eskew

---

**6.** The appeals procedure itself was also questionable. According to the policy manual and Eskew's testimony, the committee did not maintain the final decision to retain or discharge the employee. Rather, after a hearing on the matter, the committee would make a recommendation to Dr. Holcombe, who would decide whether to keep or discharge the employee. In the present case, the committee recommended that Garza be discharged. Dr. Holcombe accepted the committee's recommendation and sent a letter terminating Garza's employment with the TAHC effective February 8, 1990.

testified that the TAHC office in Austin permitted an administrative worker who had been injured to work a job that required less physical exertion. Rudy Bazan, a brucellosis inspector, testified that he had been injured on the job three times as an employee with the TAHC. At one point during his employment, Bazan injured his elbow. He testified that the TAHC permitted him to return to work even though he wore a cast. Additional evidence included the testimony of Javier Jaime Garza, another TAHC employee. Javier Jaime Garza testified that he switched from brucellosis inspector to tick inspector when TAHC experienced an outbreak of ticks in the areas. Javier Jaime Garza did not experience a cut in pay as a result of the move.

TAHC contends that it did not have a motive to discriminate against Garza. TAHC argued it does not pay worker's compensation benefits or worker's compensation premiums and does not have a hand in determining which worker's compensation claims should be accepted or denied. However, as noted above, there was evidence to show that TAHC failed to follow agency policy in terminating Garza's employment. Evidence that an employer fails to follow established company policy regarding termination is probative motivation. *See Montes*, 821 S.W.2d at 695.

We find that the circumstantial evidence and the inferences that could be drawn from that evidence constituted some evidence of a causal connection between Garza's worker's compensation claim and his termination. Accordingly, we overrule TAHC's second issue.

### DAMAGES

■ TAHC also contends that no evidence was presented to sustain the jury's award of damages for past lost wages and mental anguish. In a related issue, TAHC contends that the trial court erred in disregarding the jury's finding that Garza failed to mitigate his damages.

In the present case, the jury charge asked whether Garza failed to exercise reasonable care and diligence in seeking other suitable employment in order to mitigate his damages. They were then asked what amount would constitute the reasonable damages suffered by Garza based on past lost earnings and benefits, future lost earnings and benefits, past mental anguish, and future mental anguish. The jury found Garza failed to mitigate his damages between January 1990 and June 1996. However, the jury awarded an amount of $87,959 in past lost wages and benefits and $125,000 in past mental anguish. The jury did not award damages for future lost wages and benefits and mental anguish. Garza filed a motion to disregard the jury's finding on mitigation because TAHC failed to produce evidence that there were comparable jobs available to Garza during the time period the jury found Garza had failed to mitigate. The trial court granted Garza's motion to disregard and entered judgment for the damage amounts awarded by the jury.

■ The correct measure of damages for past lost wages is the amount of money the employee would have earned had he not been terminated less any sum he did earn after termination. *Canutillo Indep. Sch. Dist. v. Olivares*, 917 S.W.2d 494, 500 (Tex.App.-El Paso 1996, no writ); *Burlington Coat Factory Warehouse of El Paso, Inc. v. Flores*, 951 S.W.2d 542, 547 (Tex. App.-El Paso 1997, no writ). Garza presented evidence of his salary at the time of his termination. In addition, Horace L. Odem, II, a professor of finance at the University of Texas at Tyler, was called to testify regarding the amounts of past lost wages and benefits. He testified that his calculations were based on salary and benefits earned by Garza at the time of his termination as a brucellosis inspector. Odem based his calculations starting from May 5, 1989 when Garza was earning $18,180 a year in salary, $965.25 in state-paid social security per year, and $1380 in state-paid insurance per year. He com-

puted these amounts considering Garza's employment until the age of 56 and to the age of 66. Based on these figures, Odem concluded that Garza was entitled to between $475,000 and $565,000 in past lost wages.

In addition, the jury could have considered the testimony of Javier Jaime Garza who testified that he maintained the same salary despite his move from brucellosis inspector to tick inspector. This evidence indicated that Garza could have earned the same amount had he been made a tick inspector. Accordingly, we must disagree with TAHC's assertion that there was no evidence to support the jury's award for past lost wages.

■ In addressing the issue of past lost wages, we must also address the issue of mitigation. The general rule as to mitigation of damages in breach of employment suits is that the discharged employee must use reasonable diligence to mitigate damages by seeking other employment. *See Gulf Consolidated Int'l, Inc. v. Murphy*, 658 S.W.2d 565, 566 (Tex.1983); *Gorges Foodservice, Inc. v. Huerta*, 964 S.W.2d 656, 669 (Tex.App.-Corpus Christi 1997, no writ); *America West Airlines, Inc. v. Tope*, 935 S.W.2d 908, 915 (Tex. App.-El Paso 1996, no writ). Mitigation is a defensive issue upon which TAHC bore the burden of proof at trial. *See Gorges Foodservice, Inc.*, 964 S.W.2d at 669; *America West Airlines, Inc. v. Tope*, 935 S.W.2d at 915. Id. Mitigation of damages is ordinarily a question of fact for the jury. *See Hygeia Dairy Co. v. Gonzalez*, 994 S.W.2d 220, 224 (Tex.App.-San Antonio 1999, no pet.). In a wrongful termination case, the adequacy of an employee's efforts to mitigate and the reasonableness of an employee's explanation for rejecting a job offer are fact questions properly left to the jury. *See Gorges Foodservice, Inc.*, 964 S.W.2d at 669; *America West Airlines, Inc. v. Tope*, 935 S.W.2d at 915; *Pacesetter Corp. v. Barrickman*, 885 S.W.2d 256, 263 (Tex. App.-Tyler 1994, no writ).

■ In the instant case, the jury found that Garza failed to mitigate; however, the trial court granted Garza's motion to disregard the jury's finding. A trial court may disregard a jury's finding and grant a motion for judgment notwithstanding the verdict only when there is no evidence upon which the jury could have based its findings. *See Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 227 (Tex.1990); *County of Real v. Sutton*, 6 S.W.3d 11, 13–14 (Tex.App.-San Antonio 1999, pet. filed); Tex.R. Civ. P. 301. When reviewing a judgment n.o.v., we must determine whether there is any evidence upon which the jury could have made the findings. *See County of Real v. Sutton*, 6 S.W.3d at 13–14. The record is reviewed in the light most favorable to the findings considering only the evidence and inferences that support the findings and rejecting the evidence and inferences contrary to the findings. *See Navarette v. Temple Indep. Sch. Dist.*, 706 S.W.2d 308, 309 (Tex.1986); *County of Real v. Sutton*, 6 S.W.3d at 13–14. If there is more than a scintilla of competent evidence to support the jury's findings, then the judgment notwithstanding the verdict will be reversed. *See Navarette v. Temple Indep. Sch. Dist.*, 706 S.W.2d at 309; *County of Real v. Sutton*, 6 S.W.3d at 13–14.

■ Viewing the evidence in accordance with the applicable standard, Garza testified that the only job he held in the seven years between the date of his termination and the date of trial was an unpaid job on his parents' ranch. When asked how often he looked for work during that time, he responded that he did not know, but he had looked in "several" places. The last time he looked for work was three or four months before the trial. That effort was merely an informal inquiry to his neighbors about working on their ranch. There was also evidence that Garza rejected a job as tick inspector. While rejection of a job offer does not conclusively establish a failure to mitigate, it is some additional evidence to support the jury's find-

ing. *See America West Airlines, Inc. v. Tope,* 935 S.W.2d at 915. We conclude that the jury could infer from the evidence presented that Garza had not used reasonable diligence to obtain another job.

Because we conclude that the trial court erred in disregarding the jury's finding on mitigation, we agree with TAHC that the trial court erred in awarding Garza damages for lost wages.

 We review an award of unliquidated damages such as mental anguish by a sufficiency of the evidence standard. *See Larson v. Cactus Util. Co.,* 730 S.W.2d 640, 641–42 (Tex.1987). Where there is direct evidence of the nature, duration, and severity of a plaintiff's anguish which establishes a substantial disruption in their daily routine, we must sustain an award of damages for mental anguish. *See Parkway Co. v. Woodruff,* 901 S.W.2d 434, 444 (Tex.1995); *Saenz v. Fidelity & Guar. Ins. Underwriters,* 925 S.W.2d 607, 614 (Tex. 1996). Such evidence can be from the claimant's own testimony or that of a third party. *See Woodruff,* 901 S.W.2d at 444. We have previously held that mental anguish is more than mere disappointment, anger, worry, anxiety, resentment or embarrassment. *Wal–Mart Stores, Inc. v. Odem,* 929 S.W.2d 513, 528 (Tex.App.-San Antonio 1996, writ denied).

In the present case, Garza testified that he was stunned, embarrassed, and humiliated by the questions posed by Hermes when he questioned him at home. He was further humiliated when he received his final notice of termination after his hearing. Aurora Garza testified as to the particular ways her husband changed as a result of his discharge. She described Garza as being irritable, depressed, and under tremendous stress after his termination. She noticed physical changes such as weight gain, weight loss, sleeplessness and a breakout of hives. The hives continued to exist at the time of trial. She further testified that her husband "felt less of a man" because he was not providing for his family. In addition, as a result of the termination, the couple was forced to delay their decision to have another child. Personally, she found it very difficult to communicate with her husband. The change in Garza's mental and physical character were in existence from the time of his termination to the time of trial. We find that this evidence constitutes direct evidence of mental anguish. Accordingly, we overrule TAHC's third and fourth issues regarding damages.

Because we find the evidence sufficient enough to support the jury's award of damages for mental anguish, we overrule appellant's third issue.

### REINSTATEMENT AND ATTORNEY'S FEES

 TAHC next asserts that the trial court erred in ordering Garza's reinstatement because it lacked the jurisdiction to grant such equitable relief. Similarly, in its sixth issue, TAHC contends that the trial court erred in awarding attorney's fees because fees are not recoverable. Upon an express finding that TAHC and Holcombe, in his official capacity, violated Garza's right to due process under the Texas State Constitution, the jury awarded Garza $75,000 in attorney's fees, $20,000 in the event of an appeal, and an additional $20,000 in event of writ and argument to the Texas Supreme Court. The trial court entered a judgment for those amounts and ordered reinstatement pursuant to the Declaratory Judgments Act ("DJA").

Under the DJA, a trial court, when acting within its jurisdiction, has the power to declare the rights, status, or other legal relations of a party under limited situations. TEX. CIV. PRAC. & REM.CODE ANN. § 37.003 (Vernon 1997). These situations include the following:

A person interested in a deed, a will, a written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract or franchise may have determined

any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relation thereunder.

TEX. CIV. PRAC. & REM.CODE ANN. § 37.004 (Vernon 1997). The issue, as submitted to the jury, stated the following:

> Did Julio Alfonso Garza prove that the Texas Animal Health Commission or John Holcombe in his official capacity deprived him of continued employment in violation of the due course of law provisions of the State Constitution?
>
> Answer: YES or NO

We agree with TAHC that the issue, as submitted to the jury, failed to ask about Garza's status in relation to any written contract, statute, ordinance or instrument. Rather, it placed the issue in the context of a constitutional violation. Nothing in the issue made the award of attorney's fees and reinstatement proper under the DJA. Accordingly, we sustain TAHC's fifth and sixth issues.

### JUDGMENT AGAINST HOLCOMBE

■ In its seventh and final issue, TAHC asserts that the trial court erred in rendering a judgment against both TAHC and Holcombe in his official capacity because such a judgment violated section 101.106 of the Texas Tort Claims Act. Section 101.106 provides:

> A judgment in an action or a settlement of a claim under this chapter bars any action involving the same subject matter by the claimant against the employee of the governmental unit whose act or omission gave rise to the claim.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.106 (Vernon 1997). The bar of section 101.106 has been held to apply to the rendition of concurrent judgments. *See Thomas v. Oldham*, 895 S.W.2d 352, 355 (Tex.1995) (stating that this section bars any action at any time before or during the pendency of the action against an employee). Pursuant to *Thomas*, we must agree with TAHC's contention and sustain its seventh issue.

### CONCLUSION

Our review of the entire record leads us to conclude that there was some evidence to establish a causal connection between Garza's filing of a worker's compensation claim and his termination from TAHC. In addition, there was sufficient evidence to support the jury's award of damages. However, because the trial court erred in disregarding the jury's finding that Garza failed to mitigate his damages, we reverse the portion of the trial court's judgment awarding Garza damages for past lost earnings and render judgment that Garza is not entitled to damages for past lost earnings. We further reverse that portion of the trial court's judgment awarding Garza attorney's fees and reinstatement pursuant to the Declaratory Judgments Act as the trial court was without jurisdiction to provide such remedies, and we render judgment that Garza is not entitled to reinstatement or to any recovery of attorney's fees. Finally, we reverse the judgment as against Holcombe in his official capacity, and render judgment that Garza take nothing as against Holcombe in his official capacity. The remainder of the trial court's judgment is affirmed.