**Alegria LA TIER, Appellant,**

v.

**COMPAQ COMPUTER CORPORATION,**
**Appellee.**

No. 04–03–00119–CV.

Court of Appeals of Texas, San Antonio.

Oct. 29, 2003.

Linda D. King, Joe S. Yardas, Houston, for Appellant.

Roxella T. Cavazos, Rose M. Chiego, Houston, for Appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, SANDEE BRYAN MARION, Justice, and PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by ALMA L. LÓPEZ, Chief Justice.

Alegria La Tier ("La Tier") appeals a summary judgment granted in favor of Compaq Computer Corporation ("Compaq") in a suit involving a claim for retaliatory discharge. On appeal, La Tier contends that she presented sufficient evidence to raise a genuine issue of material fact with regard to: (1) whether a causal link existed between her workers' compensation claim and her discharge; and (2) whether the reason proffered by Compaq to support her discharge was legitimate. We reverse the trial court's judgment and remand the cause to the trial

court for further proceedings consistent with this opinion.

## BACKGROUND

La Tier was hired by Compaq in March of 1997. La Tier initially reported to Keith Pollack. La Tier's 1999–2000 performance review, which was given to La Tier on July 24, 2000, states that Pollack "reported inconsistent results with regard to [La Tier's] performance and gave an overall summary of her performance as 'spotty'. However, she had good results from her supervisor, earlier in 1999." La Tier's overall rating was A, which is the middle rating and is described as attained or achieved expectations. La Tier responded to several points she disagreed with in the performance review.

On August 11, 2000, La Tier returned to work after a disability leave and was assigned to report to Ron Scheiderer as an administrative assistant. On January 11, 2001, Scheiderer drafted a discussion guide for a coaching session with La Tier. Scheiderer discussed the guide with Edward McKissic, the Director of Human Resources for Compaq. The guide noted that La Tier was able to handle the day-to-day tasks that Scheiderer requested; however, La Tier never assisted others when she had available time and sometimes chose to fill available time with non-work activities. Scheiderer's biggest complaint regarding La Tier was attendance. La Tier had missed 39.5 days over a five month period not including vacation or short term disability leave, 54% of this time was personal time, and a part of the time was training that Scheiderer had not approved. La Tier failed to account for most of the absences on her time sheets. The guide also noted that La Tier needed to check her work for accuracy and described one occasion where La Tier's scheduling caused Scheiderer to miss meetings with clients. The guide stated that La Tier was not performing to requirements. "She needs improvement in attendance, the quality of work and her desire to take on more work."

On January 19, 2001, Scheiderer and McKissic met with La Tier to counsel her regarding her poor work performance and poor attendance. At the counseling session, Scheiderer gave La Tier a spreadsheet showing her absences and asked her to account for the unplanned absences within a week. Scheiderer reminded La Tier about her accounting on January 26 and 31 and February 1 and 5, 2001. La Tier did not comply with Scheiderer's directive until March 12, 2001.

On January 30, 2001, La Tier went to the Compaq clinic after she fell at work. The clinic had La Tier complete an incident report and sent her back to work. La Tier called the clinic that afternoon because her wrist and knee were still hurting. The clinic made arrangements for La Tier to see Compaq's doctor on February 1, 2001. The doctor prescribed ibuprofen for pain and sent La Tier back to work.

On February 3, 2001, La Tier went to the Durrett Chiropractic Clinic because her wrist still hurt. On February 5, 2001, Dr. Durrett's office sent Compaq notice that La Tier would be out of work until February 8, 2001, because her "injury [was] very acute, needs a few days for swelling to subside." On February 7, 2001, Dr. Durrett's office sent Compaq a second notice stating that La Tier would be out of work for two weeks until her first progress exam on February 16, 2001. On February 16, 2001, Dr. West–Garcia sent Compaq a notice stating that La Tier could return to work on February 19, 2001, on a part time basis for four hours each day with restrictions against climbing stairs and ladders and excessive typing (no more than 20 minutes per hour).

On March 8, 2001, Kellie Thomas, a product marketing manager, reported that La Tier was directed to order food for a meeting for 14–16 people. Thomas reported that La Tier ordered food for 20 people, together with 4 "to go" boxes and 4 "to go" cups. Before the meeting ended, La Tier took "to go" containers containing food with her when she left work.

On March 15, 2001, Scheiderer and McKissic met with La Tier to discuss the food incident. La Tier admitted taking the food. La Tier was suspended with pay pending further investigation. On Friday, March 16, 2001, McKissic phoned La Tier to inform her that her employment had been terminated for violating company policy prohibiting dishonesty, theft, and misuse of company assets. Because La Tier was not home, McKissic left a message for her to call him. La Tier returned McKissic's call on Monday, March 19, 2001, and McKissic told her that she had been terminated.

On October 19, 2001, La Tier sued Compaq alleging that she was terminated in retaliation for filing a workers' compensation claim. Compaq moved for summary judgment, asserting that: (1) La Tier failed to meet her burden to show that a causal link existed between her termination and the filing of her workers' compensation claim; (2) Compaq established a legitimate non-discriminatory reason for La Tier's termination as a matter of law; and (3) La Tier lacked evidence of a retaliatory motive. The trial court granted summary judgment in favor of Compaq, and La Tier timely appealed.

### Traditional or No Evidence Motion?

■ During oral argument, Compaq was insistent that its motion was a traditional motion for summary judgment; however, in discussing the applicable summary judgment standards in its brief,

Compaq references the standards applicable to both traditional and no evidence motions. A no-evidence motion is appropriate when the party without the burden of proof moves for summary judgment on the basis that the party with the burden of proof at trial cannot produce legally sufficient evidence to support its theory of liability. *See Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.*, 994 S.W.2d 830, 834 (Tex.App.-Houston [1st Dist.] 1999, no pet.) (noting party with burden of proof at trial bears burden at summary judgment proceeding); *see generally* Timothy Patton, Summary Judgments in Texas § 5.01(d)(ii) (3d ed.2002).

■ A burden-shifting analysis is applied in determining who bears the burden of proof in discrimination cases. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex.2000). The plaintiff has the initial burden of establishing a causal link between the termination and the filing of a claim for workers' compensation benefits. *Texas Animal Health Comm'n v. Garza*, 27 S.W.3d 54, 59 (Tex. App.-San Antonio 2000, pet. denied). "Once this burden has been met, the burden shifts to the employer to rebut the alleged discrimination by showing there was a legitimate reason for the employee's termination." *Id.* Once the employer establishes a legitimate non-discriminatory reason for the termination, the burden shifts back to the employee to either: (1) present evidence raising a fact issue on whether the reason for termination was a pretext for the discrimination; or (2) to challenge the employer's summary judgment evidence as failing to prove as a matter of law that the reason given was a legitimate, nondiscriminatory reason. *Willrich*, 28 S.W.3d at 24.

■ Applying the burden-shifting analysis, La Tier would bear the burden at trial to initially establish a causal link. In its

motion Compaq asserted, "In sum, La Tier cannot establish a causal link between her workers' compensation claim or other protected activity because she lacks the direct and circumstantial evidence" required by the case law. We construe this as a challenge to La Tier's ability to adduce summary judgment evidence to raise a genuine issue of material fact regarding the causal link element of La Tier's claim. In addition, if Compaq met its burden of proving as a matter of law that a legitimate reason existed for the termination, Compaq acknowledged in its motion that the burden would shift back to La Tier but asserted, "La Tier lacks evidence of retaliatory motive." Accordingly, we construe the motion as a no-evidence motion with regard to La Tier's ability to adduce evidence regarding the existence of a causal link and a retaliatory motive. *Heiser v. Eckerd Corp.*, 983 S.W.2d 313, 316 (Tex.App.-Fort Worth 1998, no pet.) (analyzing motion challenging party's ability to adduce evidence as a no-evidence motion). However, because Compaq bears the burden of proving as a matter of law that it had a legitimate, nondiscriminatory reason for terminating La Tier, its motion for summary judgment as to this element is considered a traditional motion for summary judgment.

### Standard of Review

Under traditional summary judgment standards, a party moving for summary judgment has the burden of establishing as a matter of law that no genuine issue of material fact exists as to one or more essential elements of the plaintiff's cause of action. *Willrich*, 28 S.W.3d at 23. In reviewing a summary judgment, an appellate court accepts as true all evidence supporting the non-movant, indulges every reasonable inference in favor of the non-movant, and resolves all doubts in the non-movant's favor. *Id.*

We apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *Richter v. Wagner Oil Co.*, 90 S.W.3d 890, 894 (Tex.App.-San Antonio 2002, no pet.). We look at the evidence in the light most favorable to the respondent against whom the summary judgment was rendered, disregarding all contrary evidence and inferences. *Id.* A no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *Id.* Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact. *Id.* More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Id.*

### Causal Link

"Although a former employee need not prove that the filing of a workers' compensation claim was the sole cause of termination, we must determine that were it not for the filing of a claim, the employer's decision to terminate would not have occurred." *Garza*, 27 S.W.3d at 60. Where no direct evidence establishes the causal link between an employee's discharge and his filing of a workers' compensation claim, "circumstantial evidence and the reasonable inferences which can be drawn from that evidence can provide affirmative support for" a finding of a causal link. *Id.* The following circumstantial evidence can be considered: (1) knowledge of a compensation claim by those making a decision to terminate; (2) expression of a negative attitude toward the employee's injury; (3) failure to adhere to established company policies with regard to progres-

sive disciplinary action; and (4) discriminatory treatment of an employee in comparison to other employees; and (5) evidence that the stated reason for the discharge was false. *Continental Coffee Products Co. v. Cazarez,* 937 S.W.2d 444, 451 (Tex. 1996).

■ It does not appear to be disputed that Scheiderer and McKissic knew about La Tier's worker's compensation claim.

With regard to the expression of a negative attitude, La Tier testified in her deposition that Scheiderer called Dr. Durrett's clinic and told the clinic that he intended to contest the claim. In his deposition, McKissic stated that it was not typical for a manager to call an employee's chiropractor. In her affidavit, La Tier stated that Scheiderer called her at home after he received the notice from Dr. Durrett's office and said, "So you were able to work last week but you can't work this week . . . . tell me how this works." La Tier further stated that Scheiderer was shouting during the meeting on March 12, 2001, and kept telling her that it was "damn inconvenient" for her to take time off. Furthermore, La Tier stated that Scheiderer told her that he was not going to sign her time sheets that had workers compensation/work injury on them. La Tier also stated that after McKissic notified her that she was terminated, "The very next thing he said, was he asked what was the status of my workers compensation claim."

With regard to the company's disciplinary policies, the policies were followed assuming that La Tier's actions in taking the food constituted dishonesty, theft or the misuse of company property.

In analyzing whether La Tier was treated in a discriminatory manner and whether the stated reason for her discharge was false, the question becomes whether the actions La Tier took with regard to taking the food were any different than actions taken by other employees in similar circumstances. *See Rogers v. City of Fort Worth,* 89 S.W.3d 265, 280–82 (Tex.App.-Fort Worth 2002, no pet.) (distinguishing wrongdoing of other employees that did not involve the same types of dishonesty); *Paragon Hotel Corp. v. Ramirez,* 783 S.W.2d 654, 658 (Tex.App.-El Paso 1989, writ denied) (noting test requires comparison of employees guilty of similar infractions). La Tier admitted ordering extra food; however, she explained that the type of food Thomas requested had to be ordered in increments of ten. La Tier also stated that she told Thomas that the entrees had to be ordered in increments of ten. La Tier also told Scheiderer and McKissic about the ordering requirement when confronted. McKissic admitted that he did not call catering to determine if the food was required to be ordered in increments of ten. With regard to taking the food, La Tier states that it is common practice for administrative assistants to eat the food left over from a meeting. La Tier states that she would receive an email or a phone call from other administrative assistants to get leftover food at least once or twice a week. La Tier stated that the managers were aware of this practice and on a number of occasions the managers would be the person to call the assistants and tell them to get the leftover food. McKissic admitted that it was common for employees to take the food left over after a meeting; however, McKissic qualified that the meeting had to be over and permission had to be given. In response to further questioning on these qualifications, McKissic testified as follows:

Q. All right. So your testimony as we sit here today is that in all instances when the secretaries or administrative personnel take food left over from a meeting, it is, one, after the

meeting is over and, two, with permission?

A. I can't answer that for all administrative assistants.

McKissic admitted that there was no company policy prohibiting food from being taken or requiring permission before taking food. McKissic admitted that he had never prepared a memo requiring employees to ask permission before taking food.

After reviewing La Tier's summary judgment evidence, we conclude that McKissic and Scheiderer's knowledge of the claim, Scheiderer's negative attitude toward La Tier's injured condition, and the conflicting evidence regarding whether La Tier was treated differently than others in response to taking left over food was sufficient to raise a genuine issue of material fact with regard to whether a causal link existed between La Tier's termination and her filing of a workers' compensation claim. *See Rogers*, 89 S.W.3d at 280–82 (finding causal link based on knowledge, negative attitude, failure to follow policy, and stating false reason for termination even though no evidence established disparate treatment); *Wal–Mart Stores, Inc. v. Amos*, 79 S.W.3d 178, 186–191 (Tex.App.-Texarkana 2002, no pet.) (finding evidence legally sufficient to establish causal link based on knowledge, negative attitude, discriminatory treatment, and falsely stated reason for termination even though no evidence showed that company failed to follow policy).

### LEGITIMATE REASON AND PRETEXT

■ Because the evidence was sufficient to raise a fact issue regarding the causal link, the burden then shifted to Compaq to establish a legitimate reason for La Tier's termination. *Garza*, 27 S.W.3d at 59. We hold that the conflicting evidence regarding whether La Tier's actions in taking the food violated company policy raises a genuine issue of material fact regarding whether the reason proffered by Compaq for her termination was a legitimate, nondiscriminatory reason.

The set up time for the lunch was 11:30 p.m. The clean up time was 3:00 p.m. La Tier did not take the food until 1:15 p.m. La Tier admitted that she ordered "to go" boxes and in response to whether she contemplated taking food home, La Tier stated, "If I was still there, and if there was some left, and when they wrapped up the meeting, because I think it was set for the food to be catered off because you can only have it set for an hour, hour and a half. I think it was set up at noon, that it would be the time that they did it (sic). So I figured, yeah, I'd take—if there was any left, I'd take me a meal. That's something that's always done." La Tier also admitted that she did not check to determine if everyone in the meeting had eaten when she took the food.

Everyone agrees that the common practice permits employees to take left over food. Thomas and McKissic contend that the food cannot be taken until after a meeting is over and permission is given; however, no written company policy sets forth those requirements. Thomas could not recall if food had been taken by employees without asking permission. Thomas never reported that there was not enough food because La Tier had taken food. La Tier was asked, "Now, the rule was if there was food left over, it was after the meeting was over, correct?" La Tier responded, "After the picking-up time, I believe is how it is. You know, it really varies because, I mean, I've been called, 'Hey, look, there's a lot of food in here. Why don't you come and get you a plate,' and the meeting's still on."

La Tier stated that she went by the offices of other administrative assistants to tell them that the food was available; how-

ever, none of the assistants were in their offices. McKissic testified that he asked the assistants if they were in their offices and was told that they were not in their offices. McKissic testified that he would have taken it into consideration if La Tier had found the assistants in their office and taken them food. McKissic was then asked, "So it's theft if she takes the food for her own consumption, but it may not have been theft had she given it to co-workers?" McKissic responded, "I didn't say that."

Compaq cites *Miller v. Stolthaven Houston, Inc.*, 2003 WL 1563806 (Tex. App.-Houston [1st Dist.] Mar. 27, 2003, pet. filed) (not designated for publication). In that case, the employee agreed that the action he took—clocking-in in his street clothes—was against company policy. In the instant case, a genuine issue of material fact exists regarding whether Compaq legitimately believed that the actions taken by La Tier violated the company's policy against dishonesty, theft, and misuse of company property.

## CONCLUSION

Because the evidence raises a genuine issue of material fact regarding whether there was a causal link between La Tier's workers' compensation claim and her termination and whether the reason given by Compaq for terminating La Tier was a legitimate, nondiscriminatory reason, the trial court's judgment is reversed, and the cause is remanded to the trial court for further proceedings consistent with this opinion.