NUMBER 13-98-540-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


___________________________________________________________________


COLONIAL COUNTY MUTUAL 

INSURANCE COMPANY
, Appellant,


v.



HECTOR VALDEZ
, Appellee.

___________________________________________________________________


On appeal from the 197th District Court


of Cameron County, Texas.


___________________________________________________________________


O P I N I O N



Before Justices Dorsey, Chavez, and Rodriguez


Opinion by Justice Dorsey



 Appellant Colonial County Mutual Insurance Company (Colonial)
appeals from a trial court judgment in favor of Hector Valdez on his
claims against Colonial for violations of the Deceptive Trade Practices
Act (DTPA) and the Insurance Code. We reverse the damage award for
additional damages, reform the trial court's judgment to reflect that
reduction in damages and, as reformed, affirm.

Facts


 Hector Valdez bought a 1992 Plymouth Acclaim in November
1994, and arranged insurance for the car with Colonial through the
Diego Luna Insurance Agency. An employee of the insurance agency
told Hector that the car was insured "against theft, against accidents,
against medical expenses, everything concerning the insurance." A few
months after obtaining this insurance, Hector sold the car to his son,
Rene Valdez, for $7,000. Rene obtained a loan from Mercantile Bank in
order to make the purchase. Hector called the Diego Luna Insurance
Agency and told them Mercantile Bank would be calling them to make
"changes" and "arrangements" on the insurance. Diego Luna testified
that an employee of Mercantile Bank did call, and asked to verify
insurance on the car for "a Mr. Valdez." The bank was told that "Mr.
Valdez" had insurance. Hector continued to pay insurance premiums
on the car while Rene owned it. It is undisputed that Hector never told
Colonial or Diego Luna Insurance Agency that he had sold the car to
Rene. It is also undisputed that Hector was never informed, orally or in
writing, that he could only insure the car if he owned it.

 In November 1995 Hector's policy was automatically renewed. On
January 14, 1996 the car was stolen. Hector reported the theft and
Colonial proceeded to investigate. During this investigation, Colonial
discovered that Rene was the owner of the car. On March 19, 1996
Colonial sent Hector a letter informing him that "the handling of this
claim is being conducted under a Reservation of Rights" because
Colonial was investigating whether Hector had an "insurable interest"
in the car. On April 5, 1996 Colonial filed a declaratory judgment action
in Travis County to determine whether Hector had an insurable interest
in the car. In a summary judgment dated August 11, 1997, the Travis
County trial court ruled that Hector did not have an insurable interest. 


 The instant case was tried in February 1998, and the jury heard
evidence regarding the Travis County summary judgment in Colonial's
favor. In June 1999, the Third Court of Appeals reversed the Travis
County declaratory judgment, holding that Colonial had failed to
establish as a matter of law that Hector did not have an insurable
interest, and remanded for further proceedings. See Valdez v. Colonial
County Mut. Ins. Co., 994 S.W.2d 910 (Tex. App.--Austin 1999, pet.
denied).

 In the instant case, the jury found that Colonial had engaged in a
false, misleading, or deceptive act or practice under the Deceptive Trade
Practices Act, had engaged in an unfair or deceptive act under section
21.21 of the Texas Insurance Code(1) and had engaged in this conduct
knowingly. Hector was awarded $20,000 for mental anguish, $11,500
in attorney fees for the Travis County lawsuit, $6,500 for lost benefit of
the bargain, $8,000 in attorney fees for the instant case, and $76,000
in additional damages premised on the finding that Colonial had acted
knowingly. On appeal, Colonial contends that the jury's findings on
liability and damages are not supported by legally or factually sufficient
evidence, and that the trial court erred in denying its motion to transfer
venue.

Failure to Disclose under the DTPA



 Colonial argues that the evidence is legally and factually
insufficient to support claims that it violated the DTPA or insurance
code by failing to disclose information. We first address Colonial's
challenge to the jury's finding under 17.46(b)(23) of the DTPA which
defines "false, misleading, or deceptive acts or practices" to include:

 the failure to disclose information concerning goods or
services which was known at the time of the transaction if
such failure to disclose such information was intended to
induce the consumer into a transaction into which the
consumer would not have entered had the information been
disclosed.


Tex. Bus. Com. Code Ann. § 17.46 (b)(23) (Vernon Supp. 2000).

 Colonial argues that a mere nondisclosure of material information
is not enough to establish DTPA liability under that definition. See
Century 21 Real Estate Corp. v. Hometown Real Estate Co., 890 S.W.2d
118, 126 (Tex. App.--Texarkana 1994, writ denied). We agree.

 Under the plain language of 17.46(b)(23), the failure to disclose
known information concerning goods or services is only a violation if it
was intended to induce the consumer into a transaction into which the
consumer would not have entered had the information been disclosed. 
Tex. Bus. Comm. Code Ann. § 17.46(b)(23); accord Century 21 Real
Estate, 890 S.W.2d at 126. To prove a DTPA action for failure to
disclose, a plaintiff must show the following:

 1. A failure to disclose information concerning goods or
services;


 2. Which was known at the time of the transaction;


 3. Which was intended to induce them into a transaction; 
and


 4. That they would not have entered into the transaction if
the information had been disclosed.


Kessler v. Fanning, 953 S.W.2d 515, 521 (Tex. App.--Fort Worth 1997,
no pet.).

 There is no evidence that the company failed to disclose
information with the intent to induce Valdez into entering the contract. 
The matter that was not disclosed that became material was the
necessity of Valdez to maintain an "insurable interest" in the car in
order to recover on the policy. He was not told that if he sold the car,
or otherwise lost his interest in the vehicle, he would no longer be
covered. We find absolutely no evidence in the record that the company
knew or should have known that Valdez intended, thought about, or
even considered selling his car, so that information about the necessity
of an "insurable interest" would become important to the sale of the
policy. 

 For a failure to disclose to become actionable under this portion of
the DTPA, it must be done with the intent to induce the purchaser to
buy. Valdez did not tell the company of his intention to sell the car and
keep the policy, or that such matters were material at the time the
policy was purchased. We find no evidence that the withholding of
information about the necessity of the policy holder having an
"insurable interest" in the insured property was done with the intention
of inducing Valdez to buy the policy.

 Accordingly, there is no evidence to support recovery under
section 17.46(b)(23) of the DTPA.

Harmless Error


 Having so held, we now must determine whether submission of
a single faulty theory of liability will require reversal. We hold that,
because liability was found under an additional question that would
justify imposition of the entire award of damages, the error is harmless.

 Texas Rule of Appellate Procedure 44.1(a) states that no judgment
may be reversed on appeal on the ground that the trial court made an
error of law unless the court of appeals concludes that the error
complained of:

 (1) probably caused the rendition of an improper judgment;
or


 (2) probably prevented the appellant from properly
presenting the case to the court of appeals.


Tex. R. App. P. 44.1. We hold that submission of the faulty theory in the
DTPA question was harmless because the jury charge also contained
a separate question regarding liability under the insurance code that
was sufficient, alone, to justify the award of damages. Accordingly,
submission of the incorrect liability theory was harmless error.

 Three liability questions were submitted to the jury. The first
related to the DTPA causes of action, and included four alternative
liability theories. The question read:

 Did Colonial County Mutual Insurance Company
engage in any false, misleading, or deceptive act or practice
that Hector Valdez relied upon to his detriment and was a
producing cause of damages to Hector Valdez?


 "Producing cause" means an efficient, exciting, or
contributing cause that, in a natural sequence,
produced the damages, if any. There may be more
than one producing cause.


 "False, misleading, or deceptive act or practice" means
any of the following:


 (a) Filing suit founded upon a written contractual
obligation of and signed by the defendant to pay
money arising out of or based on a consumer
transaction for goods, services, loans, or
extensions of credit intended primarily for
personal, family, household, or agricultural use in
any county other than in the county in which the
defendant resides at the time of the
commencement of the action or in the county in
which the defendant in fact signed the contract;
or


 (b) Representing that goods or services have
sponsorship, approval, characteristics,
ingredients, uses, benefits, or quantities which
they do not have or that a person has a
sponsorship, approval, status, affiliation, or
connection which he does not; or


 (c) Representing that an agreement confers or
involves rights, remedies or obligations which it
does not have or involve, or which are prohibited
by law; or


 (d) The failure to disclose information concerning
goods or services which was known at the time
of the transaction if such failure to disclose such
information was intended to induce the consumer
into a transaction into which the consumer would
not have entered had the information been
disclosed.


 Answer "Yes" or "No".


 Answer: YES 


This Court has held that subsection (d) is an invalid basis for liability in
this case--i.e., no evidence supports an affirmative finding under that
theory. Accordingly, because this Court is unable to determine whether
the liability finding under this question was based on this improper
theory or on one of the proper theories, Casteel would require reversal
of the verdict if question one was the only liability question submitted
to the jury. See Crown Life Ins. Co. v. Casteel, No. 98-0218; 2000 WL
72142, *7­10 (Tex. January 27, 2000).

 In Casteel, like the instant case, the theories of liability under the
DTPA were submitted to the jury alternatively. Four of the thirteen
theories were found to be legally defective. The Texas Supreme Court
held that in such circumstances, the error of submitting legally defective
liability theories to the jury is harmful error. It reasoned:

 It is fundamental to our system of justice that parties have
the right to be judged by a jury properly instructed in the
law. Yet, when a jury bases a finding of liability on a single
broad-form question that commingles invalid theories of
liability with valid theories, the appellate court is often
unable to determine the effect of this error. The best the
court can do is determine that some evidence could have
supported the jury's conclusion on a legally valid theory. To
hold this error harmless would allow a defendant to be held
liable without a judicial determination that a factfinder
actually found that the defendant should be held liable on
proper, legal grounds. See Muldrow & Underwood,
Application of the Harmless Error Standard to Errors in the
Charge, 48 Baylor L. Rev. 815, 838-40 (1996); Dorsaneo,
Broad-Form Submission of Jury Questions and the Standard
of Review, 46 S.M.U. L. REV. 601, 634­36 (1992). 
Accordingly, we hold that when a trial court submits a single
broad-form liability question incorporating multiple theories
of liability, the error is harmful and a new trial is required
when the appellate court cannot determine whether the jury
based its verdict on an improperly submitted invalid theory.


 It is essential that the theories submitted be authorized
and supported by the law governing the case. If they are
not, the appellate court must, at a minimum, be able to
determine whether properly submitted theories constituted
the basis of the jury's verdict. Here, four of the thirteen
theories in the single liability question were improperly
submitted because they required that Casteel be a
consumer. Yet the language of these theories was altered to
remove any reference to their consumer-status requirements. 
Thus, the jury was confronted with four liability theories
available only to consumers, but was given no indication
that Casteel was required to be a consumer to succeed
under any of them. Given these facts, it is possible that the
jury based Crown's liability solely on one or more of these
erroneously submitted theories. At any rate, it is impossible
for us to conclude that the jury's answer was not based on
one of the improperly submitted theories.


Casteel, at *8­9.


 However, the court also noted that in certain circumstances,
submission of a faulty theory might be harmless "when questions are
submitted in a manner that allows the appellate court to determine that
the jury's verdict was actually based on a valid liability theory." Casteel,
at *10. In the present case, the jury's affirmative finding on liability
under the insurance code renders the finding under the defective DTPA
question immaterial.

 Two additional questions regarding liability were submitted to the
jury along with the DTPA question we have held to be defective. The
second question asked whether Colonial County engaged in any
unconscionable action or course of action. The jury answered "No" to
this question. The third question related to liability under the Insurance
Code. It stated:

 Did Colonial County Mutual Insurance Company
engage in any unfair or deceptive act or practice?


 "Unfair or deceptive act or practice" means any of the
following:


 a. Making or causing to be made any statement
misrepresenting the terms, benefits or
advantages of an insurance policy; or


 b. Making, or directly or indirectly causing to be
made, an assertion, representation, or statement
with respect to insurance that was untrue,
deceptive, or misleading; or


 c. Misrepresenting to a claimant a material fact or
policy provision relating to the coverage at issue;
or


 d. Failing to provide promptly to Plaintiff, Hector
Valdez, a reasonable explanation of the factual
and legal basis in the policy for an insurer's denial
of the claims; or

 

 e. Failing to affirm or deny coverage of a claim
within a reasonable time; or


 f. Failing to submit a reservation of rights letter to
Plaintiff within a reasonable time; or


 g. Making any misrepresentation relating to an
insurance policy by:


 (a) Making any untrue statement of a material
fact; or


 (b) Failing to state a material fact that is
necessary to make other statements not
misleading, considering the circumstances
under which the statements are made; or


 (c) Making any statement in such a manner as
to mislead a reasonably prudent person to a
false conclusion of material fact; or


 (d) Failing to disclose the full terms of the
policy.

 

 Answer "Yes" or "No".


 Answer: YES 


 The damages question asked what amount of damages would
compensate Valdez for Colonial's conduct described in either question
one, two, or three. Actual damages were awarded for mental anguish,
attorneys' fees for the declaratory judgment action and loss of the
benefit of the bargain. Attorneys' fees were also awarded. Because
these damages are the same whether they are considered to be
compensation for the DTPA violations or the to be compensation for the
insurance code violations, we hold that submission of the defective
DTPA question did not cause rendition of an improper judgment. See
Tex. R. App. P. 44.1. Because we have held that the DTPA question
contained an invalid theory of liability and thus, could not form the basis
for the judgment, we will restrict our remaining analysis to Colonial's
liability under the insurance code and disregard the remaining points
relating to Colonial's DTPA liability.

Failure to Disclose under the Insurance Code


 Colonial also argues that the plaintiff's insurance code claims
based on failures to disclose fail for the same reasons. We disagree. 
The insurance code prohibits the making of any misrepresentation
relating to an insurance policy by:

 Failing to state a material fact that is necessary to make
other statements not misleading, considering the
circumstances under which the statements are made; or


 Making any statement in such a manner as to mislead a
reasonably prudent person to a false conclusion of a material
fact; or


 Failing to disclose the full terms of the policy.


Tex. Ins. Code Ann. art. 21.21, § 4 (11)(b), (c), (e) (Vernon Supp. 2000). 
We hold that Colonial's failure to disclose to Valdez the fact that his car
would not be insured if he transferred the title to his son is actionable
under these sections.

 Colonial made statements in the policy itself that indicated that the
vehicle was covered. Nothing in the policy indicated that the vehicle
would not be covered because of the transfer. Also, while Valdez did
not know for certain whether the insurance company had been advised
of the transfer to his son, he instructed the bank to contact the
insurance company to verify coverage on the car at the time of the
transfer. He was reasonable in assuming that the bank's representative
advised the insurance company of the transfer, that being the
fundamental reason that the bank was verifying coverage. Under these
circumstances, Colonial's actions violated the insurance code sections
listed above.

 First, Colonial failed to state the material fact that transfer of title
would void the insurance coverage. Statement of that material fact was
necessary to make not misleading the terms in the policy showing the
coverage to be effective. Thus, liability under section 4 (11)(b) is
appropriate. Tex. Ins. Code Ann. art. 21.21, § 4 (11)(b) (Vernon Supp.
2000). Also, Colonial's failure to state, either orally or in writing, that
transfer of title would void the coverage would have misled a
reasonably prudent person to the false conclusion that the car was
covered after the transfer. The fact that the policy itself indicated that
the vehicle was still covered, and the fact that the insurance company
apparently verified to the bank that the car was covered after the
transfer makes this argument even more compelling. This gives rise to
liability under section 4 (11)(c). Tex. Ins. Code Ann. art. 21.21, § 4
(11)(c) (Vernon Supp. 2000). Finally, under section 4 (11)(e), it is a
violation to fail to disclose the full terms of the policy. Colonial's
conduct violated the plain meaning of this provision. Thus, we hold
that the evidence is legally sufficient to support a finding of insurance
code violations based on Colonial's failure to disclose information.

Breach of Contract


 Colonial also argues that any claim for misrepresentation under the
insurance code must fail because it amounts to merely a claim for
breach of contract to pay benefits. The supreme court has held that an
allegation that the defendant has breached a contract does not, without
more, constitute a violation of the DTPA. Crawford v. Ace Sign, Inc.,
917 S.W.2d 12, 14 (Tex. 1996). At least one court has extended this
doctrine to insurance code violations under the same reasoning. See
Gulf States Underwriters of La., Inc. v. Wilson, 753 S.W.2d 422, 430
(Tex. App.--Beaumont 1988, writ denied).

 On the contrary, we find that Valdez's complaints relate to the
impression created by the policy and the conduct of Colonial's agents,
and not to the fact that the policy did not cover his vehicle after he sold
it to his son. Valdez is not suing on the basis that Colonial breached its
promise to cover his vehicle. That issue was covered in the declaratory
judgment action. Rather, Valdez here seeks compensation for the
damages flowing from the fact that Colonial sold him a policy that
appeared to cover his vehicle when it did not. The insurance code sets
forth specific conditions relating to an insurance policy contract that
give rise to a cause of action. We reject Colonial's contention that
Valdez's suit amounts to nothing more than a breach of contract suit.

Unfair Settlement Practice


 Next, Colonial argues that there is no evidence that it committed
an unfair settlement practice as defined by the insurance code. In that
regard, the jury was asked whether Colonial:

 Failed to promptly provide Valdez with a reasonable
explanation of the factual and legal basis in the policy for its
denial of his claim;


 Failed to affirm or deny coverage within a reasonable time;
or


 Failed to submit a reservation of rights letter to Valdez
within a reasonable time.


See Tex. Ins. Code Ann. art. 21.21, § 10(iv), § 10(v)(A), § 10(v)(B) (Vernon
Supp. 2000).

 Colonial argues that it did not timely notify Valdez of acceptance,
rejection, or the inability to accept or reject his claim because Valdez did
not send to it all items, statements and forms that Colonial required in
order to do so. See Tex. Ins. Code Ann. art. 21.55, § 3(a),(c), (d) (Vernon
Supp. 2000). Valdez argues that the terms "promptly" and "within a
reasonable time" should be interpreted in light of the deadlines set out
in section 21.55 of the Texas Insurance Code.(2) During the presentation
of his case, Valdez presented evidence of the deadlines in article 21.55
to the jury. If these deadlines apply, it is undisputed that Colonial failed
to satisfy them. However, Colonial contends that these deadlines were
never triggered because Valdez failed to provide all the materials and
information requested in a letter sent to him by Colonial on January 17,
1996. The January 17 letter asked Valdez to provide:

 (1) A completed Theft Statement form;

 

 (2) A Power of Attorney Document;

 

 (3) A completed Proof of Loss form;

 

 (4) Copies of Vehicle Service Records;

 

 (5) Recent Photographs of the vehicle;

 

 (6) A copy of the Bill of Sale or a Licence Registration
Receipt;

 

 (7) Negotiable Title or a copy of the title;

 

 (8) All sets of keys to the vehicle.

 

Valdez provided the Theft Statement form, the Power of Attorney, and
the Proof of Loss form. He did not provide items 4 - 8. Colonial argues
that, because Valdez failed to supply these documents, it never received
"all items, statements, and forms required by the insurer to secure final
proof of loss." See Tex. Ins. Code. Ann. art. 21.55 §3(a) (Vernon Supp.
2000). We are unaware of any Texas case examining what documents
are "required by the insurer to secure final proof of loss" for purposes
of triggering the deadlines in section 3 of article 21.55. 

 We hold that items 4 - 8 demanded by Colonial were not required
to secure final proof of loss. Colonial presented no evidence and has
offered no argument explaining why it required these materials. 
Common sense indicates that materials such as service records, sets of
keys, and photographs of the vehicle are irrelevant to proving the loss
of the vehicle. Therefore, Valdez's failure to provide these materials did
not excuse Colonial from complying with the deadlines in article 21.55. 
The jury could have rightfully concluded that Colonial's failure to comply
with these deadlines constituted failing to affirm or deny coverage
within a reasonable time and failing to promptly provide the insured
with an explanation for the denial of his claim. We overrule Colonial's
argument that no evidence existed to support the jury's findings that it
engaged in unfair settlement practices under the insurance code.

Misrepresentation Claims under the Insurance Code


 Colonial also argues that the evidence was insufficient to establish
a claim for misrepresentation under the insurance code. The jury was
asked whether Colonial violated the following provisions of the
insurance code by:

 making or causing to be made any statement
misrepresenting the terms, benefits, or advantages of an
insurance policy;

 

 making, or directly or indirectly causing to be made, an
assertion, representation, or statement with respect to
insurance that was untrue, deceptive, or misleading; 

 

 misrepresenting to a claimant a material fact or policy
provision relating to the coverage at issue; or


 making any misrepresentation relating to an insurance
policy by . . . making any untrue statement of a material fact.

 

See Tex. Ins. Code Ann. art. 21.21 § 4(1), § 4(2), § 4(10)(i); § 4(11)(a)
(Vernon Supp. 2000).

 Colonial cites Moore v. Whitney-Vakey Ins. Agency, 966 S.W.2d
690, 692 (Tex. App.--San Antonio 1998, no pet.) and Sledge v. Mullin,
927 S.W.2d 89, 94 (Tex. App.--Fort Worth 1996, no writ) for the
proposition that in the absence of an affirmative misrepresentation, a
mistaken belief about the scope of coverage is not actionable. We find
those cases to be distinguishable from the situation at hand.

 In Moore v. Whitney-Vakey, Moore sought to impose liability under
the insurance code for the being sold a general commercial liability
policy that did not cover employee lawsuits for retaliatory discharge. 
Moore, 966 S.W.2d at 691. Moore thought when he bought liability
insurance that he was being covered for any liability that may occur,
but admitted that the insurance agent never told him that the liability
policy would cover all lawsuits against him. Id. The appellate court
held that there was no cause of action for misrepresentation under the
insurance code under these facts because no affirmative
misrepresentation was made. Id. at 692­93.

 Moore contended that he should have been informed of the
provisions of the policy, and the agent never told him what was in the
policy. Id. at 691. Moore admitted, though, that he never asked the
agent to tell him what the policy covered, nor did he recall any
conversations with McLain about the coverages he wanted prior to
obtaining the policy. Id. In fact, the parties stipulated that the sole
issue to be determined by the trial court was whether, as a matter of
law, a duty existed on the part of the insurance company or agent to
advise Moore whether or not that type of coverage would be provided
under the policy. Id. The court held that a claim based solely on the
insured's mistaken belief about the scope of coverage would fail under
the insurance code in the absence of some specific misrepresentation
by the insurer or agent about the insurance. Id. at 692­93. 

 However, in Valdez's case, the policy itself indicated that the
vehicle was insured at the time the claim arose. That amounts to an
affirmative misrepresentation. In Moore, the policy itself indicated that
it did not cover retaliatory discharge actions.

 Sledge v. Mullin is also readily distinguishable. Sledge, 927
S.W.2d 89. In that case, Ruby Sledge sold her car to her son. Id. at
90­91. She called her insurance agent and told him to substitute a new
car for the car she sold to her son on her auto insurance policy that
covered several cars. Id. When her son wrecked the car she had sold
to him, she sued her insurance agent alleging that he should have told
her that the car would no longer be covered and should have told her
how to extend coverage for the car she sold. The Fort Worth Court of
Appeals held that there was no cause of action for misrepresentation
under the insurance code for such conduct. Id. at 94­95. It stated: "As
a matter of law, we hold that by doing exactly what Ruby asked him to
do, substituting the Citation for the Nova, [the agent] did not violate . .
. sections . . . of the Texas Insurance Code." Id. at 94.

 Mrs. Sledge sought to impose a duty on the insurance agent to
suggest alternatives before following her instruction to delete a car from
a policy. The court stated that "[Mrs. Sledge]'s reliance, if any, on [the
agent] to advise her of her insurance needs is not proof of a
misrepresentation or deceptive trade practice by Mullin." Id. at 94. 
Like the court in Moore, the Sledge court held that an affirmative
misrepresentation is required for a violation, and a mere mistake on the
part of the policyholder regarding the scope or availability of coverage
will not give rise to a cause of action for misrepresentation. Id. at 93.

 We have already found the equivalent of an affirmative
misrepresentation in Valdez's case. When an insurance policy that is
paid up and in effect at the time of the claim plainly states that it covers
the automobile in question, and no other part of that policy states that
a basis for exclusion of that vehicle exists, we believe the policy itself
creates a false impression. In this case, statements in the declarations
page of the insurance policy say that coverage is provided for the
"named insured." The named insured is "Hector Valdez." The policy
says coverage is provided for "any vehicle shown on the declarations
page." The only vehicle on the declarations page is the 1992 Plymouth
Acclaim.

 The cause of action based on the misrepresentation of the policy
is predicated on the representations that Valdez was the insured and
the 1992 Acclaim that was later stolen was the "covered vehicle." 
When the vehicle was stolen and the insured made a claim under the
policy, it was refused on the previously undisclosed reason that Hector,
because he no longer owned the car, did not have an insurable interest. 
This defense was not disclosed to Hector when he bought the policy. 

 The declarations page stated explicitly what the agreement was
between the parties: that Hector Valdez was the insured and the 1992
Plymouth Acclaim was the covered vehicle. This is exactly what Hector
was led to believe when he bought the insurance policy. Hector does
not complain of "tricky" language in the declarations that misled him;
in such an instance it would be necessary to show he relied on the
ambiguous wording, and to do that he would have to know what it
was.

 Here the misrepresentations were that he was the insured and the
1992 Acclaim was the covered vehicle, which the declarations page
confirmed. Hector's cause of action is based on those two
misrepresentations: that he was the insured and that car was covered. 
After the theft occurred and he made a claim for the loss, the defendant
took the position that although he was the named insured and the
covered vehicle was stolen, he still lost. Coverage was denied because
of an undisclosed technicality.

 We believe this factual scenario fits squarely within the insurance
code sections prohibiting: making a statement misrepresenting the
terms, benefits, or advantages of an insurance policy, see Tex. Ins. Code
Ann. Art. 21.21 § 4(1) (Vernon Supp. 2000); making an assertion,
representation, or statement with respect to insurance that was untrue,
deceptive, or misleading, see id. at § 4(2); and making a
misrepresentation relating to an insurance policy by making an untrue
statement of a material fact. We overrule Colonial's point of error and
hold that the evidence is sufficient to support a cause of action for
misrepresentation under the insurance code sections that were
submitted to the jury.

"Knowing" Conduct


 Colonial also contends that the evidence is insufficient to support
the jury's finding that it acted "knowingly" when committing the
wrongful conduct under the insurance code. The insurance code
defines "knowingly" to mean "actual awareness of the falsity,
unfairness, or deception of the act or practice made the basis for a claim
for damages under . . . this Article." Tex. Ins. Code Ann. art. 21.21, §2(c)
(Vernon Supp. 2000). The statute also provides that "'actual
awareness' may be inferred where objective manifestations indicate
that a person acted with actual awareness." Id. We agree that the
plaintiff produced no evidence to show that Colonial acted knowingly. 
Plaintiff conceded that he did not personally advise Colonial that he had
sold the car to his son.

 Therefore, Colonial could not have knowingly made the
misrepresentations regarding whether the car would be covered in that
event. Also, without knowledge that the failure to disclose the fact that
transfer would void coverage, Colonial could not have knowingly failed
to disclose information with any awareness of the "falsity, unfairness,
or deception of the act or practice." Id. The only theories of liability that
Colonial could have committed "knowingly" were the "unfair settlement
practices" theories. Under those, Valdez charged that Colonial failed to
provide a prompt, reasonable explanation of the factual and legal basis
in the policy for its denial of the claim, failed to affirm or deny coverage
within a reasonable time, or filed to submit a reservation of rights letter 
to him within a reasonable time. The supreme court has explained that:

 "Actual awareness" does not mean merely that a person
knows what he is doing; rather, it means that a person
knows that what he is doing is false, deceptive, or unfair. In
other words, a person must think to himself at some point,
"Yes, I know this is false, deceptive, or unfair to him, but I'm
going to do it anyway."


St. Paul Surplus Lines Ins. Co., Inc. v. Dal-Worth Tank Co., Inc., 974
S.W.2d 51, 53­54 (Tex. 1998). Valdez presented no evidence that
Colonial's actions in settling his claim were taken with any intention to
deceive or treat him unfairly or give him false information. We sustain
Colonial's point of error and hold the evidence is insufficient as a matter
of law to find knowing conduct.

Damages


 Finally, Colonial contests the jury's award of damages. First,
Colonial contends there is no evidence to support the jury's award of
$20,000 for mental anguish damages. We disagree.

 We review the award of mental anguish damages by a sufficiency
of the evidence standard. See Larson v. Cactus Util. Co., 730 S.W.2d
640, 641-42 (Tex. 1987). Where there is direct evidence of the nature,
duration, and severity of a plaintiff's anguish which establishes a
substantial disruption in their daily routine, we must sustain an award
of damages for mental anguish. See Parkway Co. v. Woodruff, 901
S.W.2d 434, 444 (Tex. 1995). Direct evidence may be in the form of the
plaintiff's own testimony, that of a third party or that of an expert. Id. 
While direct evidence is not required, it is preferred. See id. We hold
that Valdez provided direct evidence showing that the nature, duration,
and severity of his mental anguish created a substantial disruption of
his daily routine. 

 Valdez testified that he felt deceived, "very mad," and powerless. 
He said that this affected his health in the form of high blood pressure
and sleeping disorders. We hold this evidence to be sufficient, and
refuse to disturb the jury's award of mental anguish damages. Cf.
Vickery v. Vickery, 999 S.W.2d 342, 378 (Tex. 1999) (holding plaintiff's
testimony that she "didn't eat," "didn't sleep," "cried all the time," and
was very emotionally disturbed, devastated and worried about her
family was sufficient to support an award of mental anguish damages);
Texas Animal Health Com'n v. Garza, No. 04-97-00793-CV, 2000 WL
728995 (Tex. App.--San Antonio June 7, 2000) at *7 (finding evidence
of mental anguish sufficient where wife offered testimony that plaintiff
was irritable, depressed, stressed, and suffered weight gain, weight
loss, sleeplessness and a breakout of hives); Robertson County v.
Wymola, No. 03-99-00328-CV, 2000 WL 373761, (Tex. App.--Austin
April 13, 2000) (holding direct testimony from plaintiff regarding mental
anguish sufficient); Reyna v. Safeway Managing General Agency for
State, No. 04-97-00857-CV, 2000 WL 339427, (Tex. App.--San Antonio
March 31, 2000) at *15 (same); Texas Farmers Ins. Co. v. Cameron, No.
05-99-00222-CV, 2000 WL 225887, (Tex. App.--Dallas February 29,
2000) at *7 (holding evidence that plaintiff "felt bad" insufficient for an
award of mental anguish, but evidence that co-plaintiff was terrified, felt
devastated, could not sleep, and dramatically reduced participation in
church activities was sufficient); Norwest Mortgage, Inc. v. Salinas, 999
S.W.2d 846, 862 (Tex. App.--Corpus Christi 1999, no pet.) (finding
evidence that plaintiff suffered stomach cramps, was unable to eat or
sleep and felt "desperate" was sufficient).

Additional Damages


 Next, Colonial challenges the jury's award of "additional
damages." Additional damages may be awarded under the insurance
code and the DTPA when the jury finds the defendant's conduct was
"knowing." See Tex. Ins. Code Ann. Art. 21.21, § 16(b)(1); Tex. Bus. &
Com. Code Ann. §17.50(b)(1).(3) Because we have held the evidence to be
insufficient to establish Colonial's conduct was "knowing," we will
reverse the damages awarded on that basis. Accordingly, this point of
error has become moot.

Attorneys' Fees


 Next, Colonial County contests the jury's award attorneys' fees of
$11,500.00 that were paid for the attorney representing Valdez in the
Travis County suit as compensatory damages for Colonial County's
misrepresentations and unfair practices. Colonial argues that Valdez
would have had to pay for an attorney regardless of whether the
coverage suit was filed in Travis County or Cameron County. Thus, the
only amount of those attorneys' fees that should be awarded is the
amount that represents the additional expenses associated with travel
to Travis County to defend the suit. We disagree with this contention.

 The crux of Valdez's lawsuit is that he was wrongfully led to
believe that a car was insured by Colonial. The jury specifically found
that Colonial County engaged in some false, misleading, or deceptive
act or practice that Hector Valdez relied upon to his detriment. The
insurance code authorizes the recovery of "actual damages" for a
violation. Tex. Ins. Code Ann. art. 21.21, §16(b)(1). If Colonial County
had not misrepresented to Valdez that the automobile was covered
when it was not, or that it would be covered when in reality it would
not, the Travis County lawsuit would never have been necessary. Thus,
we hold that the award of all costs for attorneys' fees for that lawsuit
was properly awarded as damages in this misrepresentation suit.

Damages for Loss of Benefit of the Bargain


 Finally, Colonial contends that the jury's award of $6,500.00 for
"loss of benefit of the bargain" was improper. They offer no legal
support for this argument. Their argument is, essentially, that Valdez
received everything he bargained for. We believe that the jury's award
of $6,500.00 was appropriate which represented the amount the Valdez
would have to pay for the uninsured stolen car because it was not
insured. The charge instructed that "loss of benefit of the bargain"
means the difference in the value of the policy as it was received and
the value it would have had if it had been as represented. We overrule
Colonial's point of error.

Venue


 In conclusion, we address Colonial's venue issue. Before the trial
court, Valdez asserted that venue was proper in Cameron County
because a substantial part of the events or omissions giving rise to the
claim occurred in Cameron County. See Tex. Civ. Prac. & Rem. Code
Ann. §15.002(a)(1) (Vernon Supp. 2000). In reviewing the trial court's
venue determination, we consider the entire record, including the trial
on the merits. Tex. Civ. Prac. & Rem. Code Ann. §15.064(b) (Vernon
1986); Ruiz v. Conoco, 868 S.W.2d 752, 758 (Tex. 1993). The trial
court's ruling is not reviewed for factual sufficiency of the evidence;
rather, if there is any probative evidence in the record that venue was
proper in the county where judgment was rendered, then the appellate
court must uphold the trial court's venue determination. Ruiz, 868
S.W.2d at 758. In conducting this review, we must view all the
evidence in the light most favorable to the trial court's ruling. Id.

 In this case, Valdez purchased his insurance in Cameron County,
and the alleged misrepresentations were made to him in Cameron
County. Valdez's policy was processed at Colonial's home office in
Travis County. The car was stolen in Cameron County, and Valdez
made his claim on the policy from Cameron County. Colonial arranged
from Travis County for an agent to investigate the claim in Cameron
County. Letters concerning Colonial's handling of the claim were sent
from Travis County to Cameron County. Valdez's responses were sent
from Cameron County to Travis County. The decisions to file a
declaratory judgment action and to ultimately deny Valdez's claim were
made in Travis County. 

 We conclude that the record contains probative evidence that a
substantial part of the events or omissions giving rise to the claim
occurred in Cameron County. Therefore, we find no reversible error in
the trial court's determination that venue was proper in Cameron
County.

 We REFORM the judgment, deleting the award for additional
damages of $76,000, and as REFORMED, AFFIRM.


 ______________________________

 J. BONNER DORSEY,

 Justice


Do not publish
.

Tex. R. App. P. 47.3(b).


Opinion delivered and filed

this 31st day of August, 2000.

1. In this case, the jury was asked whether Colonial had violated
Texas Insurance Code article 21.21 § 4(1); § 4(2); § 4(10)(i, iv, v(A),
v(B)); and § 4(11)(a,b,c,e).
2. Section 21.55 provides: 


 Section 3. (a) Except as provided by Subsections (b) and (d) of this
section, an insurer shall notify a claimant in writing of the acceptance
or rejection of the claim not later than the 15th business day after the
date the insurer receives all items, statements, and forms required by
the insurer, in order to secure final proof of loss.

 

 (b) If the insurer has a reasonable basis to believe that the loss
results from arson, the insurer shall notify the claimant in writing of the
acceptance or rejection of the claim not later than the 30th day after the
date the insurer receives all items, statements, and forms required by
the insurer.


 (c) If the insurer rejects the claim, the notice required by
Subsections (a) and (b) of this section must state the reasons for the
rejection.

 

 (d) If the insurer is unable to accept or reject the claim within the
period specified by Subsection (a) or (b) of this section, the insurer shall
notify the claimant, not later than the date specified under Subsection
(a) or (b), as applicable. The notice provided under this subsection must
give the reasons the insurer needs additional time.


 (e) Not later than the 45th day after the date an insurer notifies a
claimant under Subsection (d) of this section, the insurer shall accept
or reject the claim.


 (f) Except as otherwise provided, if an insurer delays payment of
a claim following its receipt of all items, statements, and forms
reasonably requested and required, as provided under Section 2 of this
article, for a period exceeding the period specified in other applicable
statutes or, in the absence of any other specified period, for more than
60 days, the insurer shall pay damages and other items as provided for
in Section 6 of this article.


Tex. Ins. Code Ann. art. 21.55 §3 (Vernon Supp. 2000).
3. The jury awarded $152,000.00 in additional damages. The trial
court lowered that amount to $76,000.00 in its final judgment entered
on the jury's verdict.