**COUNTY OF REAL and Roaring Springs Ranch, Inc., Intervenor, Appellants,**

v.

**William SUTTON and Patricia Sutton, Appellees.**

No. 04–98–00404–CV.

Court of Appeals of Texas, San Antonio.

June 2, 1999.

Rehearing Overruled Aug. 17, 1999.

**12**

Thomas B. Black, San Antonio, J. Ken Nunley, Joe M. Davis, Nunley, Davis, Jolley, Hill, Brant & Strieber, Boerne, H. Ritman Jons, Kerrville, for Appellant.

Terry Scarborough, Cynthia Olson Bourland, Hance Scarborough Wright, Austin, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, TOM RICKHOFF, Justice, ALMA L. LÓPEZ, Justice.

## OPINION

Opinion by: ALMA L. LÓPEZ, Justice.

This appeal concerns a dispute among the County of Real, a private subdivision known as Roaring Springs Ranch, Inc., and the owners of the adjacent Sutton Ranch over whether a road running through the Sutton Ranch is a public or a private road.

### BACKGROUND

Dr. and Mrs. Sutton acquired their 1,920 acre ranch in August of 1981. Ivan Hafley purchased the adjacent southern tract in 1987. Beyond the Sutton tract lies Roaring Springs Ranch, a private subdivision near Leakey, in Real County, Texas. The road in question runs from Farm to Market Road 337 ("FM 337") through these three tracts. Gates control ingress and egress through these properties. The gate at the Sutton–Roaring Springs boundary has been locked continuously for many years, since before the Suttons acquired their ranch. In 1992, Hafley locked the gate on the road in question at its access to FM 337. In 1995, the gate at the Hafley–Sutton boundary line was locked.

On January 15, 1992, Real County Attorney John A. Daniel sent a letter to Hafley and to the Suttons' attorney stating: "It is the position of the commissioners and County Judge of Real County, Texas that the road passing through the Sutton and Hafley ranch is a public road. You are therefore notified to remove the locks and chains which have been placed across said road preventing access and egress by the public." Hafley sent a letter in response asking the County to produce any evidence that the road in question was a public road. After receiving an unsatisfactory response, Hafley[1] and the Suttons filed a declaratory judgment action seeking to declare the road in question a private road. The petition was subsequently amended to seek a judgment quieting title in the road.

In response to requests for admissions, the County admitted that "there is no reference in any instrument in the Sutton tract chain of title to a public road or a county road across or existing on that tract." The County further admitted that it had not acquired a public interest in the road in question by purchase, condemnation, dedication or by a final judgment of adverse possession. The County also admitted that it had not paid the current owners of the Hafley and Sutton tracts for the use or the right to use the road in question. Dr. Sutton testified that he and his wife had never received a tax deduction or allowance for any public road running through their property. The County presented testimony concerning the County's historic maintenance of the road and use by various people for various purposes in the area.

The jury found that the road in question was impliedly dedicated as a public road prior to August 31, 1981, by the Suttons or their predecessors in title. The jury also found that a public prescriptive right to make the road a public road had been established prior to August 31, 1981, and that it had not been abandoned as a public road. The jury also found that the appellants had incurred reasonable and necessary attorneys' fees in the following amounts: $120,000 for preparation and trial, $30,000 for an appeal to the Court of Appeals, $7,500 for making or responding to a petition for review to the supreme court, and $5,000 if the petition were granted. The trial court granted a judgment not withstanding the verdict on these issues and ordered that title of the Suttons to the property in question be confirmed and that they should have title to and possession of the property described in the judgment. All other relief requested, including any award of attorney's fees was denied. Both the County of Real and Roaring Springs, Inc. appealed this judgment.

## THE STANDARD OF REVIEW

■ Our rules of civil procedure permit a trial court to disregard a jury's findings and grant a motion for judgment notwithstanding the verdict only when there is no evidence upon which the jury could have based its findings. *See* Tex.R. Civ. P. 301 & 324(c); *see also Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 227 (Tex.1990). When reviewing a judgment n.o.v., we must determine whether there is any evidence upon which the jury could have made the findings. The record is reviewed in the light most favorable to the findings considering only the evidence and inferences that support the findings and rejecting the evidence and inferences contrary to the findings. *See Navarette v. Temple Indep. Sch. Dist.*, 706 S.W.2d 308, 309 (Tex.1986); *Williams v. Bennett*, 610 S.W.2d 144, 145 (Tex.1980). If there is more than a scintilla of competent evidence to support the jury's findings, then the judgment notwithstanding the verdict will be reversed. *See Southern States*

---

1. Hafley subsequently entered into a settlement with the County and is no longer a party to the underlying suit or to this appeal. A portion of the prior litigation history of the road in question is reported at *County of Real v. Hafley*, 873 S.W.2d 725 (Tex.App.—San Antonio 1994, writ denied).

*Transp., Inc. v. State,* 774 S.W.2d 639, 640 (Tex.1989); *Navarette,* 706 S.W.2d at 309.

### IMPLIED DEDICATION

■ In 1981, the Legislature abolished the common law doctrine of implied dedication as a means of establishing that a particular road running through private property was a public road. *See* Act of May 31, 1981, 67th Leg., R.S., ch. 613, §§ 1, 2 & 4, 1981 Tex. Gen. Laws 2412 (current version at TEX. TRANSP. CODE ANN. §§ 281.002, 281.003 (Vernon 1999)).[2] As there is no provision in the statute for retroactive application, it can only be applied prospectively. *See Las Vegas Pecan & Cattle Co., Inc. v. Zavala County,* 682 S.W.2d 254, 256 (Tex.1984). The trial court, therefore, limited the admission of evidence and the jury charge to that which occurred prior to August 31, 1981, the effective date of the statute. If an implied dedication occurred prior to that date by a previous owner, a subsequent purchase of the property does not affect the dedication. *See O'Connor v. Gragg,* 161 Tex. 273, 339 S.W.2d 878, 881–82 (1960).

■ The jury answered in the affirmative to Question No. 1: " Was the road in question impliedly dedicated as a public road prior to August 31, 1981 by the plaintiffs William Sutton, or their predecessors *in title?*" The trial court instructed the jury that they must find by a preponderance of the evidence that each of the following elements of an implied dedication of a road as a public road:

(1) That the landowners making the implied dedication did certain acts, which induced the belief that they intended to dedicate the road to public use;

(2) That the landowners making the implied dedication were competent to do so;

(3) That the public relied on these acts of the landowners and were served by the dedication; and

(4) That there was an offer and acceptance of the dedication.

*See Las Vegas Pecan & Cattle,* 682 S.W.2d at 256; *Graff v. Whittle,* 947 S.W.2d 629, 635–36 (Tex.App.—Texarkana 1997, writ denied); *County of Real v. Hafley,* 873 S.W.2d 725, 727 (Tex.App.—San Antonio 1994, writ denied). Thus, in order for appellants to prevail on this issue, there must be some evidence to support each of the four elements of implied dedication.

■ The owner's acts and declarations should clearly and unmistakably show the owner's intent to dedicate the land absolutely and irrevocably to the public's use. *See Ladies' Benevolent Society of Beaumont v. Magnolia Cemetery Co.,* 288 S.W. 812, 814 (Tex. Comm'n App.1926, judgm't adopted). Where there is no direct evidence of an ancient owners' "overt act or specific declaration" indicating an intent to dedicate the property to public use, the dedication issue still may go to the jury as long as the intent properly can be inferred from the circumstances shown by the evidence. *See Graff,* 947 S.W.2d at 637; *Harger v. Cason,* 223 S.W.2d 244, 246 (Tex.Civ.App.—Waco 1949, no writ). Long-continued public use is one such circumstance inferring the required intent. *See Conway v. Irick,* 436 S.W.2d 219, 223 (Tex.Civ.App.—Fort Worth 1968, writ ref'd n.r.e.).

■ Otto Hobbs, who was 82 at the time of trial, testified that in the 1920s he lived on the Sparks Ranch, west of the Hafley Ranch, and, as a child, traveled the road in question once with his father. He recalled no locked gates or that his father asked permission to use the road at that time. On both direct and cross examination, however, his testimony is often conflicting

2. Currently, a county may acquire a public interest in a private road only by purchase, condemnation, dedication, or a court's final judgment of adverse possession. TEX. TRANSP. CODE ANN. § 281.002. A dedication must be an explicit voluntary grant communicated in writing to the county commissioners' court. *Id.* at § 281.003. Real County readily admits that it did not acquire a public interest in the road in question by any of these means.

as to which road he is referring. His testimony that the road in question was used by children who lived in the area to walk to school refers to children who lived on what is now the Sutton tract of land. His testimony concerning the overseer maintenance program suggests that landowners supplied the labor and materials to maintain the roads running through their land. Some years later, as an employee of a Mr. Schneider, Hobbs testified that he was assigned the task of working a bulldozer on the road in question in an area of the Hafley tract. He stated that

> the county was working on that road and they came to a point in the mountain there and I cut this mountain down and made a two car lane through this point, and filled in the low places through there into the Sutton place and up to about halfway through the Suttons' pasture there. The fence line between the pasture on the south side of Mr. Sutton's runs—It runs right down the point of a mountain, and we just cut right straight through there for the county.

However, Hobbs also testified that this work was being done at the behest of Mr. Hutto, a Real County Commissioner, for the purpose of relocating the road away from three creek crossings. One could reasonably infer that the active participation of a county commissioner evidences maintenance of a public road. At the time, however, Hutto leased the property now known as the Sutton Ranch. Moreover, another witness testified that there are no county records showing payment to Mr. Schneider for the work his company and Hobbs did on the road in question. One could reasonably infer from this that the road was moved at a landowner's or leaseholder's expense because it was a private road. Where circumstances are equally consistent with either of two facts and "nothing shows that one is more probable than the other, neither fact can be inferred." *Continental Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex.1996).

R.C. Talley grew up on what is now the Sutton Ranch and testified that his family's ranch hands used the road in question to haul mohair and cedar to market, that the gates were not locked at that time, but were open to all users, and maintained by the county without objection from his parents. However, it was established that Real County maintained private as well as public roads at the request of the landowner.

Milburn Wooldridge, Real County Commissioner, traveled over the dirt road in question with his dad as a child and was aware that the county maintained the road. He stated that the current purpose for the road was as a back entrance to Roaring Springs subdivision and for use by the Suttons. The gate from the Sutton Ranch into Roaring Springs, however, has been locked for 40 years and Real County no longer claims the road extending from Sutton Ranch through Roaring Springs to FM 337 to be public—only the portion of the road in question running through the Sutton Ranch up to the locked gate is claimed as public by the County.

Testimony by Hobbs and Wooldridge was sometimes confused, no doubt because they were testifying from childhood memories more than fifty years ago, as to whether the witnesses were remembering "the road in question" or some other dirt road in the area. There were two or three other ways to travel from Barksdale to Leakey in the 1920s and 30s before FM 337 was built: the road leading to Bullshead Lake, a road leading south to Uvalde, and the road running through the Maley Ranch. In 1955, at the request of the landowner and seven neighbors, the Maley road was abandoned by the county. The witnesses who recalled their own use or other uses of the road in question all related incidents where the users were people who lived on the land, were neighbors who had permission, or were business invitees of the landowner. This type of circumstantial evidence does not tend to establish any of the necessary elements of implied

dedication. There was also testimony that the road was an escape route during a flood. All such testimony would support permissive use, as readily as dedicated public use. Such evidence of public use, standing alone, is not sufficient to support a finding of donation by the owner. *See Barstow v. State*, 742 S.W.2d 495, 507 (Tex.App.—Austin 1987, writ denied).

The road in question does not appear on any historical county maps or plats. County records reveal two instances where the county asserted the road in question to be a public road. In 1973, a predecessor in title to the Sutton Ranch, J.W. Ferris, sent a letter to the Real County Judge, W.B. Sansom.[3] Ferris claims the road as a private road which has never been designated a public road. He puts the commissioners on notice that he intends to lock the entrance gate whenever he is away from the ranch for extended periods of time. The county judge responded that "from what we can determine, this is a public road by use," and, apparently, because the county has a history of maintaining all roads in the county. The letter notes that "very few of the old roads in this county were designated by the Commissioner's Court."[4] In 1992, the County

**3.** The letter, entered into the minutes of Commissioners Court states:

> July 4, 1973
> W.B. Sansom, County Judge
> Court House
> Leakey, Texas
> Subject: Road up North Fork of Camp Wood, Creek through Section 80, Blk 3, T W N G RY CO.
> Dear Sir:
> After talking to you severl [sic] weeks ago about subject road, at which time you told me that there had been no action taken by the Commissioners Court on this road during your term in office. I asked Lucille to check Commissioners Court Records concerning any action back to the time this road was put through to the mud tank area. No doubt you now know that this road has never been designated a public road.
> At this point let me explain that I have no intention of keeping my entrance gate locked. I do intend to lock it whenever we leave the ranch for any length of time. As a matter of fact it was recently locked for several days
> cc: J.B. Hutto
> Herschel Ray
> Anthony Pitts
> Mike Orton

**4.** The Commissioners Court minutes also contain the Court's reply letter:

> Real County
> Leakey, Texas
> July 10, 1973
> Mr. J.W. Ferris
> P.O. Box 188
> Camp Wood, Texas
> Dear Mr. Ferris:
> I received your letter in regard to the Road which crosses the property of Mr. Orton, yourself, Mr. A.L. Pitts and Mr. Herschel Ray. Your letter arrived the same day that we had Commissioner's Court, and therefore we discussed same.

> while we were in Dallas; however Anthony Pitts has the combination and used it during our absence. Mr. Pitts and I are in agreement on both this road and the water situation between us. I would like for you to confirm this with him.
> In addition, Herschel Ray has told both Anthony Pitts and me that he has given up any idea of using this road. I would like for you to confirm this also.
> Also, Mike Orton has offered to give me power of attorney in this matter.
> We both know that fifty years ago, or even twenty-five, there would have been no problem, but times have changed, values are quit [sic] different, people have changed and trust has changed.
> In view of the above, I am asking for your assurance that the County will refrain from interfering with this date [sic] when it is locked for protection.
> If you feel that this is a matter for the Commissioners Court, I will be glad to appear and suggest that others mentioned herein be invited.
> Sincerely,

> s/ Bill Ferris
> t/ J.W. Ferris

> From what we can determine, this is a public road by use. Very few of the old roads in this county were designated by the Commissioner's Court. I have been in the Court House 37 years and we have maintained same all this time.
> The court requested that I reply as follows: No locks are to be placed on any of the gates until the court receives a letter from each individual property owner that they desire this road closed, and that they do not expect to ever use same.
> Commissioner's Court meets the second

Attorney sent a letter notifying the Suttons' attorney and Ivan Hafley that the road running through their ranches was a public road. Neither of these letters tends to support that premise in the absence of an express dedication, however, as they are in direct response to the landowners' expressions that the road is a private one.

■ The trial court considered whether the pleadings and the evidence established as a matter of law that a long established use of a road raised a presumption of public use. The court stated, "All of the evidence that I've heard in here would indicate that it is just as reasonable for this to be a private road easement granted by the landowners to the people up and down the road, that's just as reasonable as it is to presume it is a public road." When meager circumstantial evidence generates inferences equally consistent with two different propositions, neither inference can be construed as some evidence to support a finding. *See $56,700 in U.S. Currency v. State,* 730 S.W.2d 659, 660 (Tex.1987); *see also* Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 Tex. L.Rev. 361, 365 (1960). We agree with the trial court that the nature of the evidence presented such equally consistent inferences on at least one of the necessary elements and, therefore, did not rise to the level of "some evidence" to support the jury's verdict on implied dedication. Appellants' first point of error is overruled.

### PUBLIC PRESCRIPTIVE RIGHT

■ Appellants complain that the trial court erred in setting aside the jury's finding of the county's prescriptive right to the road. Their argument, however, focuses on a jury instruction stating that use by others contemporaneous with the owner's use was not "adverse" and that claimants' or the public's use must be exclusive of the owners.[5]

■ A public right of way by prescription can be established only by showing an uninterrupted use by the public under an adverse claim of right. *See O'Connor v. Gragg,* 161 Tex. 273, 339 S.W.2d 878, 880–81 (1960); *Ladies' Benevolent Society of Beaumont v. Mangolia Cemetery Co.,* 288 S.W. 812 (Tex. Comm'n App.1929, judgm't adopted). *O'Connor* specifically states that permissive use of a roadway running over another's property that is contemporaneous with the owner's use is not adverse use. *O'Connor,* 339 S.W.2d at 881. Adverse use of a road is generally established in the same way as adverse possession of another titleholder's property. Where one's enjoyment or use of another property is consistent with the owner's own right of enjoyment or use, no adverse enjoyment is established. *See id.* The supreme court recognized long ago that

> The rule is well settled that use by express or implied permission or license, no matter how long continued, cannot ripen into an easement by prescription,

---

Monday in each month and we will be glad to discuss this matter with you and the other owners during any session.
    Respectfully yours,
    s/ W.R. Sansom, County Judge
    t/ W.R. Sansom, County Judge
    Real County, Texas
WBS/mk
cc—Mr. Herschel Ray, Uvalde Texas (P.O. Box 508)
    Mr. A.P. Pitts, P.O. Box 1485, Kerrville, Texas 78028
    Mr. Mike Orton, One Corporate Square, 2600 S.W. Freeway, Suite 110, Houston, Texas 77001

5. The instructions appellant claims were erroneous stated:

> If the use of the roadway over the land of an owner was contemporaneous with such owner's use of the same roadway, such use is not 'adverse' as is required by paragraph (2)(c) of these instructions.
> For the use of the road way over the land of an owner by the public or claimant(s) to be exclusive as is required by paragraph 2(e) of these instructions, the rights asserted by the public or the claimants must be to the exclusion of the land owners.

since user as of right, as distinguished from permissive user, is lacking.

*Id.* quoting *Othen v. Rosier,* 148 Tex. 485, 226 S.W.2d 622, 626 (1950).

Appellants argue that the Hafleys and the Suttons and their predecessors in title were all part of the general public. There is nothing "general" about their status in this context, however, because they were specifically entitled to the right of enjoyment and use by virtue of their land titles. We decline to follow the three earlier opinions cited by appellant on this issue. Appellants cite to *Fowler v. Matthews,* 204 S.W.2d 80, 85 (Tex.Civ.App.—Austin 1947, no writ), for the proposition that exclusive use does not mean the owner is prevented from using the roadway. The case states that owner's use, with the neighbor's use, is not sufficient to show permissive use. They also rely on *Chambers County v. Frost,* 356 S.W.2d 470 (Tex.Civ.App.—Waco 1962, writ ref'd n.r.e.), which states that a landowner's use, "as a member of the general public, under the factual situation presented by this record will not and does not prevent the use from becoming exclusive, and will not defeat prescriptive rights." *Id.* at 483. The application of this reasoning was disapproved in *O'Connor. See Brooks v. Jones,* 578 S.W.2d 669, 673 (Tex.1979) (contemporaneous use by owner renders use by others permissive).

Under the same analysis of the evidence for implied dedication, we do not find some evidence to support the jury's finding of a prescriptive right. There is no evidence of exclusive use by the claimants or the general public. Permissive use is just as reasonable a conclusion in this case.

We find the jury's answer to Question No. 2 to be legally and factually insufficient, and against the great weight and preponderance of the evidence. The trial court did not err in granting a judgment notwithstanding the verdict on this issue. Appellant's second issue is overruled.

## ABANDONMENT

Next, the appellants assert the trial court erred in setting aside the jury's negative answer to the Suttons' claim of abandonment. This question was presented on condition that they answer affirmatively to the issues of implied dedication and prescriptive easement. As we find that the jury's answers to the first two issues were against the great weight and preponderance of the evidence, the issue of abandonment is not relevant and need not be analyzed further. Appellants' third issue is overruled.

## ATTORNEYS' FEES

The trial court also set aside the jury's award of attorneys' fees to Real County and we review this decision under an abuse of discretion standard. On appeal, appellant relies on Section 37.009 of the Texas Civil Practice and Remedies Code which extends to the court the discretion to award attorneys' fees to the prevailing party in a declaratory judgment action. Consistent with our holdings today, we do not find error in the trial court's decision to overturn the jury's fee award. Appellants were not the prevailing party to the judgment. Appellants' fourth issue is overruled.

In sum, appellants' four issues are overruled and the judgment entered by the trial court notwithstanding the verdict is affirmed. The costs of appeal are assessed against appellants.