

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-18-00548-CV

Thomas Michael **TOWNSEND**, Sr., TMT Management, LLC, and Townsend Mineral
Company, LP,
Appellants

v.

Philip Wayne **HINDES** and Melinda Hindes Eustace,
Appellees

From the 81st Judicial District Court, La Salle County, Texas
Trial Court No. 12-09-00179-CVL
Honorable Dick Alcala, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:       Patricia O. Alvarez, Justice
               Irene Rios, Justice
               Beth Watkins, Justice

Delivered and Filed: March 18, 2020

AFFIRMED IN PART; REVERSED AND REMANDED IN PART

        This case arises from a dispute between the parties over the use of a road. Appellants

Thomas Michael Townsend, Sr., TMT Management, LLC, and Townsend Mineral Company, LP

(collectively, "Townsend") filed suit against appellees Philip Wayne Hindes and Melinda Hindes

Eustace (collectively, "Hindes"). Townsend requested declaratory relief establishing his right to

use a road on Hindes' property on theories of express dedication to the public, implied dedication

to the public, implied easement by necessity, and easement by estoppel. The trial court granted

Hindes' motions for summary judgment on each of those claims. After an evidentiary hearing, the

court also awarded Hindes attorney's fees. Townsend brings this appeal challenging the granting of summary judgment on his claims for easement by necessity and implied dedication, and the award of attorney's fees.

**Facts**

*The Disputed Road*

Townsend owns property in La Salle County, Texas. Hindes owns property to the north of, and adjacent to, Townsend's property. A forty-foot wide east-west road ("Disputed Road") runs across the southern edge of Hindes' property until it intersects with Hines Road, a public road that connects to State Highway 97. Townsend's and Hindes' properties were both once part of the O'Connor Ranch.

Townsend alleges in his pleadings that the Disputed Road was originally dedicated to public use by the recording in 1911 of the original plat for the O'Connor Ranch Subdivision ("1911 Plat"). The 1911 Plat depicts a number of proposed roads, as well as what Townsend asserts is the Disputed Road, then identified as the "Road to Theodore Lake." A second plat, subdividing an additional portion of the O'Connor Ranch, was recorded in 1920 ("1920 Plat"). The 1920 Plat depicts a forty-foot wide east-west road but does not identify it by name. Neither the 1911 Plat nor the 1920 Plat contains language expressly dedicating any depicted roads to public use.

Townsend further alleges that he, his predecessors-in-interest, other purchasers of lots in the O'Connor Ranch Subdivision, and members of the public had used the Disputed Road for decades before Hindes prohibited such use in January 2012. He contends that the Disputed Road is an extension of the public Hines Road, and provides the only legal access to his property.

Hindes, on the other hand, asserts that the Disputed Road is a private road easement that has been behind locked gates and fences for fifty years. Hindes also disputes Townsend's characterization of the Disputed Road as an extension of the public Hines Road. He contends that

the two are separate and distinct, the latter running west from State Highway 97 and then turning north at, but outside of, Hindes' locked gate. The Disputed Road runs west inside the gate across Hindes' property.

*The Agreement Road*

Townsend's predecessors-in-interest were members of the Glueck family. The Gluecks leased the surface of the property to J.W. Martin, who owned land to the south of the Glueck (later Townsend) tract. In 1981, Rebecca Glueck, J.W. Martin, Jr., Roy G. Martin, and Annette M. Ludeman (another area landowner) entered a Road Use Agreement. That agreement provides that the Martins and Ludeman, their heirs, successors, and assigns, grant to Glueck, her heirs, successors, and assigns, "the permanent right of ingress and egress, over and along an existing roadway," as specifically described. We refer to this roadway as the "Agreement Road." The 1981 Road Use Agreement is referenced in Townsend's deed.

Hindes asserts that Townsend filed a lawsuit against Martin and others in 2012 to declare his right to use the Agreement Road. Hindes further asserts that, in that lawsuit, Townsend affirmatively alleged, and judicially admitted, that he and his predecessors-in-interest had used the Agreement Road for over 90 years, that he continued to use that road at the time of the lawsuit, and that he had established an easement by prescription. In a footnote in his motion for summary judgment on implied dedication in the present case, Hindes asked the trial court to take judicial notice of the file in that 2012 lawsuit.

*The summary judgments*

Hindes moved for traditional summary judgment on Townsend's claims for express dedication, implied dedication, easement by necessity, easement by estoppel, and easement by prescription. The trial court granted the motion as to express dedication, private dedication, easement by necessity, and easement by estoppel. It denied the motion as to implied dedication

and easement by prescription. Hindes then filed a second motion for traditional summary judgment and a motion for no-evidence summary judgment on Townsend's implied dedication claim. The trial court denied the motion for no-evidence summary judgment and granted the motion for traditional summary judgment.[1] After an evidentiary hearing on Hindes' motion for attorney's fees, the court awarded fees in the amount of $428,632.23. On May 8, 2018, the court signed a final judgment ordering that Townsend take nothing on his claims and awarding attorney's fees to Hindes.

## Issues

Townsend raises three issues on appeal. In his first two issues, he asserts that the trial court twice misapplied the summary judgment standard and, as a result, erred by granting Hindes' traditional summary judgment motions on easement by necessity and implied dedication. In his third issue, Townsend asserts that the evidence is legally and factually insufficient to support the award of attorney's fees.

## Summary Judgment Standard

The summary judgment standard is of particular importance in this case because Townsend contends that the trial court's primary error was misapplying that standard. The standard includes principles governing the burden of proof as well as principles governing how the court views that proof. We will address each in detail to establish the foundation for determining whether the trial court erred by granting Hindes' traditional motions for summary judgment on easement by necessity and implied dedication.

---

[1] Hindes' three summary judgment motions were heard and ruled on by two different trial court judges.

*Summary judgment burden of proof*

We stress that the summary judgments here at issue were sought and granted under the traditional summary judgment rubric. Therefore, we present and apply only the burden of proof applicable to motions for traditional summary judgment.

"The function of the summary judgment is not to deprive a litigant of his right to trial by jury, but to eliminate patently unmeritorious claims and untenable defenses." *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 n.5 (Tex. 1979) (citing *Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929, 931 (1952)). The burden on the moving party is therefore "to submit sufficient evidence that establishe[s] on its face that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law." *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014) (internal quotations omitted); *see* TEX. R. CIV. P. 166a(c). In the context of a defendant moving for summary judgment on a plaintiff's cause of action, the movant's burden is to conclusively negate at least one of the essential elements of that cause of action. *Frost Nat. Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010).

Once a movant satisfies its initial burden, the burden then shifts to the nonmovant to raise an issue of fact as to at least one of those elements. *Amedisys*, 437 S.W.3d at 511 (citing *Clear Creek Basin*, 589 S.W.2d at 678–79). "But if the movant does not satisfy its initial burden, the burden does not shift and the non-movant need not respond or present any evidence." *Id.* In short, "summary judgments must stand or fall on their own merits." *Id.* at 511–12 (quoting *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 343 (Tex. 1993)).

*Summary judgment standard of review*

"We review the trial court's summary judgment *de novo*." *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *see Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004). Our review is therefore governed by the same principles as govern the trial

court in the first instance. *Estate of Silverman*, 579 S.W.3d 732, 736 (Tex. App.—Houston [14th Dist.] 2019, no pet.). Those principles are well-settled:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 548–49 (Tex. 1985); *see Joe*, 145 S.W.3d at 156.

"The duty of the court hearing the motion for summary judgment is to determine if there are any issues of fact to be tried, and not to weigh the evidence or determine its credibility, and thus try the case on the affidavits." *Gulbenkian*, 252 S.W.2d at 931.

*Summary judgment scope of review*

The parties appear to agree on the principles stated above. They disagree, however, on the scope of the evidence to be considered. Townsend contends that the court must disregard all evidence and inferences supporting the summary judgment movant's position unless that evidence is uncontradicted. *See Bernsen v. Live Oak Ins. Agency, Inc.*, 52 S.W.3d 306, 308 (Tex. App.—Corpus Christi 2001, no pet.). This is what the supreme court referred to in *City of Keller v. Wilson*, 168 S.W.3d 802 (Tex. 2005), as the "exclusive" standard. *Id.* at 809, 823. Under the "inclusive" standard, on the other hand, the court considers all of the evidence, but in the light most favorable to the nonmovant. *See id.* As Hindes points out, the *City of Keller* court specifically addressed the scope of review in the context of a summary judgment: "Reviewing courts do *not* disregard the evidence supporting the motion; if they did, all summary judgments would be reversed." *Id.* at 824–25 (emphasis in original).

*City of Keller* dealt specifically with review of a judgment notwithstanding the verdict and, thus, the no-evidence standard of review. *See id.* at 807–08. But the court recognized that there are several vehicles for obtaining a judgment "without or against a jury verdict," and which should occur, regardless of the vehicle, "only when the law does not allow reasonable jurors to decide otherwise." *Id.* at 823. "Accordingly, the test for legal sufficiency should be the same for summary judgments, directed verdicts, judgments notwithstanding the verdict, and appellate no-evidence review." *Id.*

Addressing the inclusive standard versus exclusive standard debate, the court concluded that the end result should be the same regardless of which standard is employed:

> If the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, then jurors must be allowed to do so. A reviewing court cannot substitute its judgment for that of the trier-of-fact, so long as the evidence falls within this zone of reasonable disagreement.
>
> Similarly, there is no disagreement about how a reviewing court should view evidence in the process of that review. Whether a reviewing court starts with all or only part of the record, the court must consider evidence in the light most favorable to the verdict, and indulge every reasonable inference that would support it. But if the evidence allows of only one inference, neither jurors nor the reviewing court may disregard it.
>
> Given these premises, it is no coincidence that the two standards should reach the same result—indeed they *must*. Any scope of appellate review smaller than what reasonable jurors could believe will reverse some verdicts that are perfectly reasonable; any scope of review larger than what reasonable jurors could believe will affirm some verdicts that are not.

*Id.* at 822 (footnotes omitted).

Applying *City of Keller* to the summary judgment context, we find that an appellate court reviewing a summary judgment, as well as a trial court considering a summary judgment motion in the first instance, is to consider all of the summary judgment evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *See id.* at

822–25. And, while the court indulges every reasonable inference and resolves any doubts against the movant, if the summary judgment evidence allows of only one reasonable inference, the court may not disregard it. *See id.*

The dispute in the case before us is over how the court should consider circumstantial evidence that gives rise to more than one inference. *City of Keller* is again instructive. "[I]t is the province of the jury to draw from [the evidence] whatever inferences they wish, so long as more than one is possible and the jury must not simply guess." 168 S.W.3d at 821. "Accordingly, courts reviewing all the evidence in a light favorable to the verdict must assume jurors made all inferences in favor of their verdict if reasonable minds could, and disregard all other inferences in their legal sufficiency review." *Id.*

Again applying *City of Keller* to the summary judgment context, a court reviewing the summary judgment evidence in a light favorable to the nonmovant must make all inferences in favor of the nonmovant if reasonable minds could, and disregard all other inferences. *See id.* But it is sometimes the case that there are no reasonable inferences to be drawn, either in favor of or against the nonmovant.

Meager circumstantial evidence "does not rise above a scintilla (and thus is legally insufficient) if jurors would have to guess whether a vital fact exists." *Id.* at 813. Consequently, "[w]hen the circumstances are equally consistent with either of two facts, neither fact may be inferred." *Id.* "Thus, when the circumstantial evidence of a vital fact is meager, a reviewing court must consider not just favorable but all the circumstantial evidence, and competing inferences as well." *Id.* at 814.

*The fundamental consideration*

The overarching principle that guides summary judgment review is that the court must determine whether the evidence is such that reasonable jurors could differ in their conclusions.[2] *See id.* at 822. If it is, then a genuine issue of material fact exists and summary judgment must be denied. *See* TEX. R. CIV. P. 166a(c) (summary judgment proper only if there is no genuine issue of material fact); *see Nixon*, 690 S.W.2d at 548–49; *Joe*, 145 S.W.3d at 156.

We turn now to the merits of the summary judgments here at issue, applying the principles discussed above to determine whether Hindes met his burden of conclusively negating at least one of the essential elements of Townsend's causes of action for easement by necessity and implied dedication. *See Fernandez*, 315 S.W.3d at 508.

**Discussion**

*Easement by necessity*

"Whether a property owner is entitled to an easement by necessity is a question of law, although underlying factual issues may need to be resolved in order to reach the legal question." *Staley Family P'ship, Ltd. v. Stiles*, 483 S.W.3d 545, 548 (Tex. 2016). Of course, in the summary judgment context, the existence of underlying factual issues would preclude the court from reaching the legal question. *See* TEX. R. CIV. P. 166a(c) (summary judgment proper only if there are no genuine issues of material fact).

"The party claiming a necessity easement must show: (1) unity of ownership of the alleged dominant and servient estates before severance; (2) the claimed easement is a present necessity

---

[2] The *City of Keller* court acknowledged that this standard still leaves open the possibility for disagreement: "It is inevitable in human affairs that reasonable people sometimes disagree; thus, it is also inevitable that trial judges and justices will sometimes disagree about what reasonable people can disagree about." 168 S.W.3d at 828.

and not a mere convenience; and (3) the necessity for the easement existed when the two estates were severed." *Stiles*, 483 S.W.3d at 548.

Hindes moved for traditional summary judgment on the ground that access to the Disputed Road is not a necessity because there are other routes providing access to Townsend's property. "A way of necessity . . . must be more than one of convenience, for if the owner of the land can use another way, he cannot claim by implication to pass over that of another to get [to] his own." *Bains v. Parker*, 143 Tex. 57, 182 S.W.2d 397, 399 (1944). In other words, "[t]he claimant is not entitled to a way of necessity if he has a right of way over the land of another." *Id.* In addition, this necessity must have existed at the time the dominant and servient estates were severed, and must also be "a continuing, present necessity." *Hamrick v. Ward*, 446 S.W.3d 377, 382 (Tex. 2014). Once the necessity terminates, so, too does the necessity easement. *Id.*; *see Bains*, 182 S.W.2d at 399. Hindes specifically argues that another route to Townsend's property—the Agreement Road—has been available since 1981 pursuant to the Road Use Agreement.

Townsend does not dispute that the Agreement Road provides physical access to his property, or that that road has, in fact, been long-used to access his property. He argues instead that it does not provide *legal* access to his property because one of the landowners across whose property the Agreement Road runs was not a party to the 1981 Road Use Agreement and does not consent to Townsend's use of the road. *See Crone v. Brumley*, 219 S.W.3d 65, 68 (Tex. App.—San Antonio 2006, pet. denied) (easement by necessity requires no other legal access to property). This argument fails for two reasons.

First, "[i]ssues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." TEX. R. CIV. P. 166a(c). Townsend did not raise the issue of legal access in his summary judgment response. He stated in that response that, at the time he purchased his property, there were two means of access—the

Disputed Road and the Agreement Road. And he specifically acknowledged the existence of the 1981 Road Use Agreement. He then stated as a factual matter that the Agreement Road "passes through the property of an owner that claims not to be a party to the agreement or subject to it in any way." He did not, however, argue that, because of this unidentified owner's position, he lacked legal access to his property by way of the Agreement Road or even that there was a material issue of fact concerning whether he had legal access by way of that road.

Second, Townsend's response did not identify any summary judgment evidence supporting his assertion that an unidentified property owner claimed not to be bound by the Road Use Agreement. Even if we consider the question of legal access to have been adequately raised, Townsend's mere say-so does not create a genuine issue of material fact on that issue. "[W]e are limited to a determination of whether the *summary judgment evidence* raises a fact issue." *Cty. of Real v. Hafley*, 873 S.W.2d 725, 728 (Tex. App.—San Antonio 1994, writ denied) (emphasis added). Thus, faced with the Road Use Agreement and his own acknowledgment of prior use of the Agreement Road by virtue of that agreement, it was Townsend's burden to produce *evidence* that legal access was lacking. *See Amedisys*, 437 S.W.3d at 511 (burden shifts to nonmovant once movant meets its burden). Townsend did not sustain this burden.

On appeal, Townsend relies on deposition testimony from Diane Lundblad to the effect that the Agreement Road passes through her property, neither she nor her predecessors-in-interest are parties to the Road Use Agreement, and she does not consent to use of any road through her property.[3] But that testimony was not before the trial court at the time it heard and decided Hindes' summary judgment motion on the issue of easement by necessity. Indeed, the court's summary judgment order is dated December 2, 2013, and Lundblad's deposition was not taken until October

---

[3] Lundblad also testified that she had never set foot on the property and did not know if any road passed through it.

20, 2017. Townsend did not move for reconsideration of the summary judgment order based on this additional evidence, nor did he make any other attempt to present this evidence to the trial court in the context of its summary judgment on easement by necessity.[4] *See, e.g., Sampson Expl., LLC v. T.S. Reed Props. Inc.*, 521 S.W.3d 766, 783–84 (tex. 2017) (considering on appeal evidence attached for the first time to a motion for reconsideration after the trial court granted interlocutory summary judgment).The record on which the trial court makes its summary judgment decision and on which we review the summary judgment is created by the movant and non-movant filing the evidence on which they rely as attachments to their respective motion or response, or by reference to appendices they file. *See* TEX. R. CIV. P. 166a(a), (b), (d).

Lundblad's deposition testimony is outside the summary judgment record and there is no indication that the trial court considered it in the context of the summary judgment on easement by necessity. We will not consider this evidence on appeal from that summary judgment.

We note that Hindes likewise attempts to import evidence and argument from the implied dedication summary judgment into the easement by necessity summary judgment. Hindes asserts on appeal that Townsend judicially admitted in a separate 2012 lawsuit that he has legal access to his property by means of the Agreement Road. But Hindes made reference to that 2012 lawsuit, and asked the court to take judicial notice of the file in that suit, only in his summary judgment motion on implied dedication, not his motion on easement by necessity. Just as we will not consider Townsend's arguments and evidence that are outside the appropriate record, neither will we consider Hindes' arguments and evidence that are outside the appropriate record. *See id.*

---

[4] Townsend did append the deposition excerpts to his summary judgment response on the issue of implied dedication, which was filed years after the court's ruling on the easement by necessity summary judgment.

Nevertheless, Hindes established through the Road Use Agreement that Townsend has access to his property by means of the Agreement Road. Townsend did not produce any evidence in response that raises a genuine issue of material fact that such access is not legal.

Townsend's only other argument concerning access by way of the Agreement Road is that that road sometimes floods and becomes impassable. But this evidence demonstrates only that use of the Disputed Road is a convenience, not a necessity. "Nearly every road can be impassable at one time or another, which does not render an alternative route a necessary one other than for a limited time. The high ground road was a mere convenience for most of the time, and cannot be said to amount to a *necessary* one in the sense of an easement by necessity." *Wilson v. McGuffin*, 749 S.W.2d 606, 609 (Tex. App.—Corpus Christi 1988, writ denied) (emphasis in original).

Hindes conclusively negated the element of necessity by establishing that another means of access was made available to Townsend's predecessors-in-interest in 1981. Once that alternate access became available, any necessity to use the Disputed Road ceased. Thus, even if an easement by necessity had existed at one time, it terminated when the necessity ceased. *See Hamrick*, 446 S.W.3d at 382.

The trial court did not err by granting Hindes' motion for summary judgment on Townsend's claim to establish an easement by necessity. Issue number one is overruled.

*Implied dedication*

In his second issue on appeal, Townsend contends that the trial court erred by granting Hindes' motion for traditional summary judgment on Townsend's cause of action to establish an implied dedication of the Disputed Road.

Effective August 31, 1981, the Texas Legislature abolished the common law doctrine of implied dedication in counties of populations less than 50,000 as a means to establish that a road running through private property is a public road. *County of Real v. Sutton*, 6 S.W.3d 11, 14 (Tex.

App.—San Antonio 1999, pet. denied); TEX. TRANSP. CODE ANN. § 281.001. But because that statute has only prospective effect, if an implied dedication occurred prior to its effective date, "a subsequent purchase of the property does not affect the dedication." *Id.* Consequently, the relevant evidence of implied dedication is limited to that which occurred before August 31, 1981. *See id.*

The essential elements of implied dedication are:

> (1) the acts of the landowner induced the belief that the landowner intended to dedicate the road to public use; (2) [the landowner] was competent to do so; (3) the public relied on these acts and will be served by the dedication; and (4) there was an offer and acceptance of the dedication.

*Lindner v. Hill*, 691 S.W.2d 590, 592 (Tex. 1985) (quoting *Las Vegas Pecan & Cattle Co. v. Zavala County*, 682 S.W.2d 254, 256 (Tex. 1984)).

Concerning the element of donative intent, this court has recognized that, "[w]here there is no direct evidence of an ancient owner's overt act or specific declaration indicating an intent to dedicate the property to public use, the dedication issue still may go to the jury as long as the intent properly can be inferred from the circumstances shown by the evidence." *Sutton*, 6 S.W.3d at 14 (internal quotation marks and citations omitted). Long-continued public use is a circumstance from which the required intent may be inferred. *Id.*

Hindes moved for traditional summary judgment on the elements of donative intent, public purpose, and public acceptance. He therefore assumed the burden of conclusively negating those elements. *See Fernandez*, 315 S.W.3d at 508 (defendant moving for summary judgment on plaintiff's claim must conclusively negate at least one essential element of the claim). But the stated basis of Hindes' motion is the perceived inadequacy of Townsend's evidence:

> Defendants submit that *the evidence presented by Plaintiffs*, even when viewed in the light most favorable to them, is *so equivocal as to do no more than create a mere surmise or suspicion* that Defendants impliedly dedicated the [Disputed Road] to public use, that the public used or relied on any acts by the Defendants, that the public would be served by the dedication or that there was an offer and acceptance of the implied dedication prior to 1981. No reasonable and fair-minded juror,

properly instructed on the law of implied dedication, could possibly find that there was long and continuous public use of the [Disputed Road] *on the basis of Plaintiffs' evidence.*

(Emphasis added.)

Hindes reiterates this position in conjunction with each of the challenged elements of implied dedication. For example:

- "In this case, the evidence submitted by Plaintiffs fails to demonstrate a clear and unequivocal intention on the part of the La Salle Company, owner of Plaintiffs' and Defendants' properties at the time of the entry of the 1911 and 1920 Plats, to dedicate any of the roads depicted on such plats for the use of the public."

- "[T]he testimony offered by Plaintiffs fails to show long and continued public use of the [Disputed Road]."

- "Even if all of the testimony offered by Plaintiffs in support of their claim for implied dedication is taken as true, no reasonable and fair-minded juror, properly instructed on the applicable law, could possibly find that there was long and continuous public use of the [Disputed Road] on the basis of this evidence."

- "[T]here is no evidence that the [Disputed Road] is necessary to access any such public institutions or public property."

- "Defendants are therefore entitled to summary judgment on Plaintiffs' claim for implied dedication because Plaintiffs cannot produce evidence that the [Disputed Road] served a public purpose at the time it was allegedly dedicated, or that it currently serves a public purpose."

- "Summary judgment on Plaintiffs' claim is also proper because there is no evidence that the public accepted an alleged offer to dedicate the [Disputed Road]."

- "For the foregoing reasons, Plaintiffs fail to raise 'some evidence' as would survive a sufficiency review . . . ."

Finally, to ensure that there is no doubt concerning Hindes' basis for summary judgment, he restates in the conclusion of his motion that "[t]he evidence presented, even when viewed in the light most favorable to the Plaintiffs, is so equivocal as to do no more than create a mere surmise or suspicion" of the elements of implied dedication.

Hindes' traditional summary judgment motion fails on its face because it ignores the applicable burden of proof. It was Hindes' burden to conclusively negate at least one of the elements necessary to establish an implied dedication. *See Fernandez*, 315 S.W.3d at 508. Unless and until he sustained that burden, Townsend had no obligation to even file a summary judgment response, much less produce evidence proving his case. *See Amedisys*, 437 S.W.3d at 511; *Rhone–Poulenc*, 997 S.W.2d at 222–23. Hindes' motion must stand or fall on its own merits. *See Amedisys*, 437 S.W.3d at 511; *McConnell*, 858 S.W.2d at 343.

Applying the appropriate burden of proof, to the extent Hindes relies on evidence he attributes to Townsend, that evidence must *conclusively negate* an element of implied dedication. It is not sufficient to urge that the evidence fails to *establish* such an element unless Hindes also proves that the summary judgment evidence comprises the entire universe of potential evidence on the matter. Townsend is entitled to a trial on his claims, at which he may adduce different or additional evidence, and may be deprived of that opportunity only if Hindes conclusively proves that Townsend's claim lacks merit. *See Clear Creek*, 589 S.W.2d at 678 n.5 (purpose of summary judgment is not to deprive litigant of right to trial). In other words, because Hindes filed a traditional motion for summary judgment, he must demonstrate that Townsend *cannot* prove his claim, not that he has not done so at the summary judgment stage. *Id.* (purpose of summary judgment is to eliminate patently unmeritorious claims).

Hindes repeatedly asserts in his motion that the summary judgment evidence is "so equivocal as to do no more than create a mere suspicion or surmise" of the elements of an implied dedication, and that such evidence would not survive a legal sufficiency review. *See City of Keller*, 168 S.W.3d at 813. Hindes particularly relies on *County of Real v. Sutton*, in which the trial court granted judgment notwithstanding the verdict on a claim of implied dedication supported by evidence similar to that presented in this case. 6 S.W.3d at 16. This court affirmed because the

evidence "presented such equally consistent inferences on at least one of the necessary elements [that it] did not rise to the level of 'some evidence' to support the jury's verdict on implied dedication." *Id.* at 17.

Townsend argues that *Sutton* does not apply because the court there was assessing the evidence after the completion of a jury trial rather than at the summary judgment stage. He also argues that, at the summary judgment stage, a trial court cannot conclude that there are equally competing inferences because it is permitted to consider only those inferences that favor the nonmovant. Townsend contends that the controlling authority on this matter is this court's opinion in *Hafley*, which involved the same parties and issues as *Sutton*, but at the summary judgment stage. *See* 873 S.W.2d at 726. We disagree that *Hafley* controls our analysis. Rather, we look to the opinion of the supreme court in *City of Keller* as applicable and binding precedent on the scope of review.

For the reasons discussed above in our explanation of the principles governing summary judgment, we reject the contention that the trial court was required to ignore equally competing inferences arising from meager circumstantial evidence. It is true that a court is required to draw *reasonable* inferences in favor of the nonmovant. *See City of Keller*, 168 S.W.3d at 822. But, if circumstances are equally consistent with either of two facts, no *reasonable* inference may be drawn because choosing one over the other would require engaging in guesswork. *See id.* at 813, 821. "Thus, when the circumstantial evidence of a vital fact is meager, a reviewing court must consider not just favorable but all the circumstantial evidence, and competing inferences as well." *Id.* at 814.

Townsend is therefore mistaken concerning the scope of the evidence the trial court was entitled to consider. Even so, he is correct that the trial court misapplied the summary judgment standard in light of that evidence.

Hindes' own argument that the summary judgment evidence is equivocal, and thus creates only speculation and surmise, effectively establishes that Hindes' motion should be denied. Again, Hindes bore the burden of conclusively negating an element of implied dedication. *See Fernandez*, 315 S.W.3d at 508. If, as Hindes himself contends, the summary judgment evidence gives rise to equal but opposite inferences, then Hindes cannot have sustained his burden. If the evidence is so equivocal as to be insufficient to prove an element, it is likewise insufficient to conclusively negate that element. And, again, unless and until Hindes negated an element of implied dedication, Townsend had no summary judgment burden to produce evidence supporting that element. *See Amedisys*, 437 S.W.3d at 511; *Rhone–Poulenc*, 997 S.W.2d at 222–23.

In examining Hindes' traditional summary judgment motion, we find only four instances in which Hindes contends that the evidence conclusively negates an element of implied dedication. Three of those instances concern the element of donative intent; the fourth concerns the element of public service.

### *Donative intent*

Hindes contends that long and continuous public use of a road may give rise to a presumption of dedication, but only if the ownership of the property or origin of public use is "shrouded in obscurity." *See Callaghan Ranch, Ltd. v. Killam*, No. 04-10-00802-CV, 2012 WL 394594, at *3 (Tex. App.—San Antonio Feb. 8, 2012, pet. denied) (mem. op.). Hindes argues that the mere existence of the 1911 Plat and the 1920 Plat negates any suggestion that the ownership of the property or origin of public use is shrouded in obscurity. But those plats do not establish that the Disputed Road, in some form or fashion, was not created and publicly used before those plats were recorded. If it was, then the ownership of the property and origin of public use remain shrouded in obscurity. The mere existence of the 1911 Plat and the 1920 Plat does not preclude a presumption arising from long and continuous public use.

Hindes next contends that the 1911 Plat and the 1920 Plat constitute direct evidence of the owner's overt act or declaration concerning public use because they do not contain any express dedication of roads to the public. Hindes impliedly equates a negative—the lack of an express declaration that the road is dedicated to the public—with proof of a positive—a declaration that the road is not dedicated to the public. This is logically unsound. The lack of an express dedication on the plats does not conclusively establish that the property owner did not evidence an intent to dedicate the Disputed Road independently of the plats.

Finally, Hindes asserts that the testimony of Townsend's witnesses concerning use of the Disputed Road actually establishes that there was no public use at all. The basis of this assertion is his argument that the testimony shows use of the Disputed Road only by agents, employees, and invitees of the property owners, not by the general public. Hindes declares that, if there had been continuous use by the general public, "a stranger would have been spotted by one of Plaintiffs' witnesses at some point."

Again, it was Hindes' burden to *negate* long and continuous public use, not simply to identify flaws in the evidence that Townsend may or may not present at trial. *See Fernandez*, 315 S.W.3d at 508. And, again, Townsend had no summary judgment burden to produce evidence demonstrating long and continuous public use unless and until Hindes met his initial burden. *See Amedisys*, 437 S.W.3d at 511; *Rhone–Poulenc*, 997 S.W.2d at 222–23. The evidence cited by Hindes does not conclusively establish that Townsend *cannot* sustain his burden of proof at trial. In other words, it does not conclusively establish that Hindes is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c).

### *Public service*

The final instance in which Hindes contends the evidence conclusively negates an element of implied dedication concerns whether the Disputed Road serves the public. Relying on this

court's opinion in *Gutierrez v. County of Zapata*, 951 S.W.2d 831 (Tex. App.—San Antonio 1997, no writ), Hindes asserts that "[t]he general public is not served by an implied dedication unless there is a showing that public institutions such as museums, cemeteries or police stations would benefit in some way from the dedication." This, however, is not what we said in *Gutierrez*.

We noted in *Gutierrez* that there was evidence that the road there at issue was used by school buses, public utilities, the fire department, and the sheriff's department. *Id.* at 841. But we did not state that such use was required in order to establish an implied dedication. *Id.* On the contrary, we specifically acknowledged that "[a] public road does not depend upon its length, *nor upon the places to which it leads*, nor upon the number of persons who actually travel upon it. In fact, proof that a road is only slightly traveled by the public does not prove the road is not a public road. If it is free and open to all who have occasion to use it, it is a public road." *Id.* (emphasis added; citations omitted). Hindes' reliance on *Gutierrez* is misplaced.

In addition to misstating the law, Hindes' argument concerning public purpose misstates the facts. Hindes states that the testimony of Roy Martin, Jr. establishes that there has never been a public institution on the Disputed Road. Martin's actual testimony, however, is that he did not know whether there had ever been any public institutions on the Glueck tract; to his knowledge, there had not been any such institutions on the Martin tract; and he had no knowledge of any such institutions on the Hindes tract. This testimony falls far short of conclusively establishing that no public institution ever existed on the Disputed Road.

Hindes also contends that the testimony of Guy Megliorino establishes that, "to his knowledge, the [Road] has never been used as a point of access for first responders in an emergency situation or otherwise." But this, too, does not accurately represent the cited testimony. The evidence to which Hindes cites shows that the question posed to Megliorino was, "As Constable for Precinct 4 in LaSalle County, have you received requests from any members of the

public that the disputed road be opened for emergency services?" Megliorino's response was, "No." This evidence does not support Hindes' contention that first responders have never used the Disputed Road. It certainly does not conclusively negate the element of public service.

Hindes did not sustain his summary judgment burden to conclusively negate at least one essential element of Townsend's claim of implied dedication. *See Fernandez*, 315 S.W.3d at 508. For that reason, the trial court erred by granting Hindes' motion for traditional summary judgment on that claim. Issue number two is sustained.

*Award of attorney's fees*

In his final issue on appeal, Townsend contends that the evidence is legally and factually insufficient to support the trial court's award of attorney's fees to Hindes. Townsend specifically challenges the sufficiency of the evidence to show that the amount of those fees was reasonable and necessary, and that recoverable fees were properly segregated from unrecoverable fees.

"[T]he award of attorney's fees in declaratory judgment actions is clearly within the trial court's discretion and is not dependent on a finding that a party substantially prevailed." *Barshop v. Medina Cty. Underground Water Conserv. Dist.*, 925 S.W.2d 618, 637 (Tex. 1996) (internal quotation marks omitted). For this reason, an appellate court is not required to reverse an attorney's fee award when it reverses a declaratory judgment, but it may choose to do so. *Kachina Pipeline Co. v. Lillis*, 471 S.W.3d 445, 455 (Tex. 2015).

We have concluded that Hindes is entitled to only a part of the relief granted by the trial court. We cannot say that the issue on which we reverse did not play a significant role in the trial court's exercise of discretion concerning its award of attorney's fees. We therefore reverse the award of attorney's fees and remand that issue to the trial court to exercise its discretion to determine the amount of attorney's fees, if any, that is appropriate. *See Neeley v. W. Orange-Cove Consol. Indep. Sch. Dist.*, 176 S.W.3d 746, 799 (Tex. 2005); *Barshop*, 925 S.W.2d at 637–38.

**Conclusion**

The trial court correctly granted Hindes' traditional motion for summary judgment on Townsend's claim to establish an easement by necessity. The court erred, however, by granting Hindes' traditional motion for summary judgment on Townsend's claim of implied dedication. We therefore reverse the final judgment insofar as it grants a take-nothing judgment on Townsend's claim of implied dedication and awards attorney's fees and costs to Hindes. Those portions of the final judgment are remanded to the trial court. The remainder of the judgment is affirmed.

Irene Rios, Justice